**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mark A. HOPKINSON,**
**Defendant–Appellant.**

**No. 79–1403.**

United States Court of Appeals,
Tenth Circuit.

Argued July 10, 1980.

Decided Sept. 4, 1980.

Charles E. Graves, U. S. Atty., Cheyenne, Wyo. (Toshiro Suyematsu and Sharon A. Lyman, Asst. U. S. Attys., Cheyenne, Wyo., with him on brief), for plaintiff–appellee.

George A. Zunker, Cheyenne, Wyo. (Urbigkit & Whitehead, P.C., Cheyenne, Wyo., with him on brief), for defendant–appellant.

Before McWILLIAMS, BREITENSTEIN and SEYMOUR, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Defendant–appellant Hopkinson was indicted jointly with Michael Hickey for various offenses relating to an explosive bomb. Count I charged transportation in violation of 18 U.S.C. §§ 844(d) and 844(a). Count II charged possession in violation of 26 U.S.C. §§ 5861(d) and 5871. Count III charged concealment in violation of 18 U.S.C. §§ 842(h) and 844(a). Count IV charged making in violation of 26 U.S.C. §§ 5861(f) and 5871. Count V charged possession in violation of 26 U.S.C. §§ 5861(i) and 5871. Count VI charged conspiracy in violation of 18 U.S.C. § 371. Hopkinson was convicted, and Hickey acquitted, on all six counts. Hopkinson appeals and we affirm.

An unindicted conspirator, and government witness, Jeff Green was arrested on April 4, 1977, in Utah by a state officer for speeding. He was driving Hopkinson's car. The officer noticed on the floor of the back seat a box from which an orange fuse was protruding. Green denied knowledge of the

box and volunteered to open it. In the box were two sticks of dynamite taped together, a detonator cap attached to one stick, and three or four coils of fuse. The officer arrested Green and took him to the Coalville County jail. The local justice of the peace fixed bail for Green at $10,000. Green called Hopkinson and told him that he, Green, was in jail for speeding.

On the next day Hopkinson and Hickey came to Utah and deposited $2,000 cash bail for Green. Subsequently Green pleaded guilty to possession of a concealed weapon and paid, out of the bail deposit, a $250 fine.

The government traced the dynamite to the Schreiner ranch from which it was stolen, together with some fuse and detonators, sometime between August and October 1976. Government witness Stoddard testified that in late August Hickey and Jamie Hysell came to her home in Mountain View, Wyoming with some dynamite, fuse and blasting caps. Both she and Green told about later experiments and pranks with dynamite.

The participants in the various events detailed in the record resided in isolated communities of an area in southwestern Wyoming known as Bridger Valley. The population centers are five to ten miles apart. Hopkinson's family had lived in Bridger Valley for many years and was engaged in ranching and construction. Hopkinson managed a store in Urie, Wyoming. Government witnesses Lacey and Green testified that Hopkinson claimed that one Mariscal, of Phoenix, Arizona, owed him, Hopkinson, money. Green said that at the request of Hopkinson he telephoned the Mariscal residence in Phoenix to demand payment. He and Hopkinson discussed means of intimidating Mariscal to secure payment.

Hopkinson, Hickey and Green were present when a dynamite bomb was made at Hopkinson's residence. Hopkinson asked Green to take the bomb to Phoenix and blow up Mariscal's car. Green was to receive $2,000 from the money which Hopkinson hoped to get from Mariscal. The plan failed because of the speeding arrest of Green. The dynamite in the bomb was from that which had been stolen from the Schreiner ranch. Two government experts identified a finger print on the box containing the bomb as that of Hopkinson. Ink marks on the box were identified by experts as the same as that of a pen used by a live-in girl friend of Hopkinson. Hopkinson did not testify at the trial.

The record discloses an aura of violence pervading the Wyoming area where various events related to the defendants and the witnesses. A bomb explosion, which killed three persons, and a separate murder had occurred. Considerable publicity had resulted from these events. The trial court, and the lawyers, were concerned with the possibility of prejudice to the defendants by any reference to the violence. Extreme caution was taken to protect the parties from any prejudice which might arise from acts unconnected with the specific offenses for which the defendants were tried.

Hopkinson claims that the trial court impermissibly limited the scope of voir dire examination of prospective jurors. In this regard consideration must be given to the mentioned background of violence and to the defense claim that government witness Green was not worthy of belief. The special prosecutor in the case was an associate in law practice with a Wyoming lawyer who was engaged as a special prosecutor in a state case arising from the violence unconnected with the instant case.

The boundaries of voir dire are within the discretion of the trial court. Rule 24, F.R.Crim.P. and *United States v. Polk*, 10 Cir., 550 F.2d 1265, 1267, cert. denied 434 U.S. 838, 98 S.Ct. 129, 54 L.Ed.2d 100. This discretion will not be disturbed unless the voir dire was inadequate to test properly the qualifications of the prospective jurors. The court need not ask requested questions which are argumentative or cumulative. *United States v. Evans*, 10 Cir., 542 F.2d 805, 813, cert. denied 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550. The case at bar is devoid of any racial overtones.

■ The trial court handled a difficult situation very well. Its questions were adequate to test qualifications without the intrusion of matters related to other offenses. See *United States v. Polizzi*, 9 Cir., 500 F.2d 856, 880, citing *Beck v. Washington*, 369 U.S. 541, 548, 82 S.Ct. 955, 959, 8 L.Ed.2d 98. The identity of, and the jurors knowledge of, the lawyers and their associates were sufficiently presented. Defense counsel pledged to do everything possible to keep the other offenses out of the trial. He may not now complain of the court's refusal to ask questions related to events for which the defendant was not on trial. The jury was fairly selected.

Defendant made a timely motion for severance which was denied. His claim was that in a joint trial he could not impeach witness Green with inconsistent statements allegedly relating to co–defendant Hickey and another crime of violence. The position of the defendant is that although he desired no reference to the other crimes, he wished to use alleged statements of Green with reference to one of those crimes in order to discredit Green. The positions are inconsistent.

■ The severance motion was made and considered in limine. The joinder of the defendants was proper under Rule 8(b), F.R.Crim.P. That rule is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system. *United States v. Isaacs*, 7 Cir., 493 F.2d 1124, 1158, cert. denied 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146. The grant of a severance lies in the sound discretion of the trial court and a defendant has a heavy burden to show prejudice by the joinder. *United States v. Smaldone*, 10 Cir., 485 F.2d 1333, 1345, cert. denied 416 U.S. 936, 951, 94 S.Ct. 1934, 1960, 40 L.Ed.2d 286, 301. See also *United States v. Parnell*, 10 Cir., 581 F.2d 1374, 1383, cert. denied 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44. Defendant has not carried that burden. Defendant is not helped by reference to Rule 14 relating to relief from a prejudicial joinder. Denial of Rule 14 relief is within the discretion of the trial court and reviewable only for abuse of discretion or plain error affecting substantial rights. *United States v. Isaacs*, 493 F.2d at 1159. The argument that a separate trial might give the defendant a better chance of acquittal does not suffice to sustain the defendant's burden of showing prejudice. *United States v. Parnell*, 581 F.2d at 1383, and *United States v. Isaacs*, 493 F.2d at 1160. Defendant was given full opportunity to discredit witness Green. The trial court properly denied the request for severance.

■ Defendant argues that the convictions of all six counts must be reversed because of inconsistency with the verdicts acquitting his co–defendant on all counts. The character and quality of the defenses of Hopkinson and Hickey were so different that the jury had a reasonable basis for return of different verdicts. Hopkinson had a motive and the testimony of experts connected him with the destructive device. No motivation is shown for Hickey and he had an alibi which, if believed, contradicted important parts of the government evidence. In any event, consistency in verdicts is not required. *Hamling v. United States*, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590. See also *United States v. Beitscher*, 10 Cir., 467 F.2d 269, 274.

■ The argument that the acquittal of co–conspirator Hickey on the conspiracy count precludes conviction of Hopkinson on that count is of no avail. The principle that one may not conspire with himself is of no materiality. Green was named as an unindicted co–conspirator. Green testified that he and Hopkinson acted in concert to make and transport the bomb. Accordingly, the acquittal of Hickey is immaterial. *United States v. Sparrow*, 10 Cir., 470 F.2d 885, 888, cert. denied 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 397.

■ Defendant's attack on the sufficiency of the evidence emphasizes the unreliability of the testimony of witness Green. Although Green's credibility was vigorously assailed, the jury must have believed his testimony implicating Hopkinson. Ample corroboration for important aspects of

Green's testimony was supplied by other witnesses, including the government's experts. The credibility of witnesses is not for our consideration. *United States v. Weiss,* 10 Cir., 431 F.2d 1402, 1407. We examine the proof sustaining the conviction in the light most favorable to the government to determine whether substantial evidence, together with reasonable inferences therefrom, suffices to support the conviction. *United States v. Swallow,* 10 Cir., 511 F.2d 514, 517. Hopkinson had a fair trial and the record sustains the jury verdict.

Affirmed.