Daniel BOLHOUSE, Appellant,

v.

STATE of Alaska, Appellee.

No. 7665.

Court of Appeals of Alaska.

Sept. 7, 1984.

Charles R. Pengilly, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

After a jury trial, Daniel Bolhouse was convicted of two counts of sexual assault in the second degree, AS 11.41.420, and two counts of attempted sexual assault in the first degree, AS 11.41.410; AS 11.31.100. Bolhouse was sentenced to consecutive terms of nine years with two years suspended on each count of attempted sexual assault in the first degree. No sentences were imposed on the remaining counts.[1] Bolhouse appeals his convictions, contending that his counsel was improperly excluded from participation in the *voir dire* examination of the jury. Bolhouse also appeals his sentence, contending that it is excessive. We affirm the conviction but remand for resentencing.

## FACTS

### The Assaults

The charges against Bolhouse arose out of two separate incidents that occurred on August 2, 1980, and January 15, 1981, in Fairbanks. He assaulted two University of Alaska coeds, intending to rape them. C.D. testified that Bolhouse followed her along a biketrail into a wooded area where

---

1. At sentencing, the state requested the court to dismiss the second-degree sexual assault counts based on *Tuckfield v. State,* 621 P.2d 1350 (Alaska 1981) (holding that assault with intent to commit rape is a lesser-included offense of rape and convictions of both violated double jeopardy). The judgment and order of probation reveals that Judge Van Hoomissen resolved the double jeopardy issue by entering convictions but no sentences on the second-degree sexual assault counts. The following notation appears as a special condition of probation:

> Counts I and III [second-degree sexual assault] will be dismissed if and when counts I and IV [attempted first-degree sexual assault] are affirmed on appeal or if no appeal is taken. *Tuckfield v. State,* 621 P.2d 1350 (Alaska 1981).

Bolhouse does not challenge the propriety of this disposition on appeal.

he knocked her to the ground. As he tried to remove her shorts, another student, Russell Talvi, happened to pass by and Bolhouse ran away. Both C.D. and Talvi identified Bolhouse as the assailant.

P.A. testified that on January 15, 1981, Bolhouse followed her along Sheep Creek Road; he chased her when she became frightened and started to run. Bolhouse caught P.A. and threw her to the ground. As P.A. struggled, Bolhouse partially undressed her and sexually molested her. As Bolhouse began to remove his own pants, P.A.'s neighbor drove by and stopped at his mailbox; P.A. yelled for help and Bolhouse ran into the woods. Immediately after the assault, P.A. noted the license number on a vehicle parked nearby which was traced to Bolhouse. P.A. positively identified Bolhouse at trial.

### Jury Selection

Jury selection began on the morning of November 9, 1982. The trial court read the indictment to the panel of thirty prospective jurors and explained that the defendant was presumed innocent until proven guilty beyond a reasonable doubt. Twelve prospective jurors were then called to the jury box and the entire panel was admonished to pay close attention to the questions asked by the court and counsel.

Judge Van Hoomissen introduced the attorneys and the defendant and called attention to a list of witnesses who would likely testify in the case. The witnesses' names were written out on a blackboard. Judge Van Hoomissen then asked a number of general questions regarding the crime of sexual assault and past contacts with the criminal justice system.[2] Both the prosecutor [3] and defense counsel [4] followed with general questions to the panel as a whole.

Next, individual *voir dire* of the jurors in the box began. Each juror answered general background questions from a written

2. Judge Van Hoomissen asked the jury:
 Anybody else know anybody that's on the board, or have any of you heard or read anything about this case? Do you or anybody close to you have any close friends, relatives ... engaged in law enforcement work of any kind, other than Mr. Lee? Do you, or anyone close to you, ever feel you've been unfairly treated by any element of the criminal justice system, whether it's law enforcement officers, judges, attorneys, or anybody else? Have any of you ever been the victim of a criminal act—the one against whom a criminal act may have been committed? Is there anything about the nature of this case, from what you've heard so far, that make any of you feel you couldn't be a fair and impartial juror? Have you or anyone close to you ever been subjected to an attack—a sexual assault of any kind—or anybody close to you ....

3. The prosecutor's general questions were as follows:
 [F]irst ladies and gentlemen of the jury, I wish to express to you—the purpose of *voir dire* is just to ask some questions to try and get a fair and impartial jury .... [A]ll of the questions I ask are directed to each and every one of you, and if I don't ask—you know, when we get down to the line, I'm not going to ask the same questions over and over again. I would ask you whether or not you've listened to those questions, and whether your answers will be materially different. So,

please bring any of the questions you have about the proceeding or—which have any bearing, whatsoever upon your ability to be a juror in this case. First, I'd like to ask you—any of you know other members of the jury panel .... And do any of you know the defendant in this case—that is Mr. Daniel Bolhouse. [T]he evidence will show in this case, Mr. Bolhouse works—back in 1981, at the—as a driver of Texaco Fuel Distributors. The evidence will show he weighed about forty pounds heavier and he had his hair parted down the middle—to help you refresh your memory. Now, can you look at him? Do any of you know Mr. Daniel Bolhouse? Any contacts with him? In this case, it will probably be some references to vulgar language. Often sexual assaults involve some other vulgar things. Is this going to cause any of you any problems, listening to that, or entertaining that kind of evidence? I don't have any other general questions Your Honor.

4. Defense counsel's questions related to whether anyone on the jury panel had close friends or relatives in law enforcement. He noted that the judge had asked whether any juror had ever been the victim of a sexual assault or any other violent crime. He further asked whether any of the prospective jurors had relatives or close friends who were connected to the University of Alaska in Fairbanks. Finally, he asked whether any of the potential jurors had ever been trial witnesses.

list posted in the courtroom.[5] Each juror was then questioned in turn by the attorneys about various matters ranging from prior jury service to attitudes about sexual assault. Defense counsel remarked during *voir dire* that the sole issue in the case would be the identification of the attacker and that the fact that both victims had been sexually assaulted would not be disputed.

Later in the afternoon, after both sides had fully participated in the *voir dire* of twenty prospective jurors and defense counsel had exercised six peremptory challenges,[6] Judge Van Hoomissen indicated that he intended to begin asking all of the questions. The following exchange occurred on the record between the court and defense counsel:

> MR. HAGEY: As I understand, you're not going to allow me to ask any more questions.
>
> THE COURT: That's right.
>
> MR. HAGEY: Can I submit questions to the court that I'd like prospective jurors to be asked?
>
> THE COURT: No, not at this point. I—you're—the record was running before.
>
> MR. HAGEY: I have questions I would like to ask.
>
> THE COURT: Well, on your record—for the record, then, at ten minutes to [4 o'clock] I advise you that at ten minutes after, I was going to start asking the questions. If you have any particular questions you want to submit them in writing, go ahead and submit them.

> MR. HAGEY: I have questions I want to ask—I have questions I would like to ask the court to ask this prospective juror before exercising my next preempt.
>
> THE COURT: Well, I'm not going to allow you to do it. I'm going allow [the state] to exercise [its next] challenge. There's going to be no other questions. A lot of the questions that are asked are either repetitious or have absolutely ... nothing to do with whether a juror can be fair.
>
> . . . .
>
> MR. HAGEY: Your Honor, one of the reasons for asking questions is to make intelligent decisions as to peremptory challenges . . . .
>
> THE COURT: I understand that.
>
> MR. HAGEY: I think it's a constitutional right ... to do that, and I'd ask the court permission to either ask the questions or I will submit the questions to the court.
>
> . . . .
>
> THE COURT: Counsel, I told you we're going to do this—I'm not asking any more questions or—no more questions are going to be asked through counsel.

Judge Van Hoomissen thereafter conducted *voir dire* of the nine additional prospective jurors it took to seat a jury.[7] During this period, defense counsel exercised Bolhouse's remaining four peremptory challenges. Two jurors were excused for cause, on the court's own motion, after indicating that they had reservations about being fair in a sexual assault case.

5. The jury questionnaire asked for each juror's name, address, occupation, number of children, birthplace, hobbies, memberships, prior experience with litigation, prior jury service, and past contact with anyone involved in Bolhouse's case.

6. At this point, one juror had been excused for cause and the state had exercised three peremptory challenges.

7. Judge Van Hoomissen questioned the remaining jurors individually. He asked each juror whether he had been able to hear the questions asked of the other jurors and their answers. He asked if the jurors had heard anything about the case that would cause them to feel that they could not be fair and impartial. He asked if

anyone close to them had been involved in law enforcement work, had been the victim of a criminal act or had been unfairly treated by the criminal justice system. He asked each juror if they could afford the defendant the presumption of innocence and whether they understood that a person is presumed innocent until he is proven guilty beyond a reasonable doubt. He asked if the jurors would follow the court's instructions and whether they had formed any opinion or conclusion about the outcome of the case. Finally, he asked whether they could give the state and the defendant a fair trial. Each juror then answered the questions on the written chart. *See supra* note 5.

After the jury was selected, the following exchange occurred:

MR. HAGEY: Specifically, Your Honor, I believe I had another—renewed inquiry as to whether I'd be allowed to ask questions as to cause or peremptory challenges, and requests for additional peremptory challenges after exhaustion of my other peremptory challenges.

THE COURT: The record ... does not reflect, and it should reflect that you've made numerous requests for the opportunity to inquire of the jurors, or to have the court accept written questions of the jurors and—prepared by yourself. And the record should reflect that I denied those requests. The record should also reflect, if it does not, that in several—at least two bench conferences here at the bench in open court, you've required— you've asked those same questions ... or privileges again. You've also asked that you be given additional peremptory challenges because the court has limited your right to ask questions. And both of those requests have been denied. Does that accurately state ....

MR. HAGEY: Yes, Your Honor. Thank you.

THE COURT: The record should also reflect that I advised both counsel early in the afternoon that they—going to have to shift gears and get going with this jury selection, and it should also reflect that I—well, I've already put this on the record. The record should reflect that it's now 5:30. This is the longest jury selection I've had since I can remember. The questions were repetitious, there were no objections to a lot of them. But, I'm not going to permit that to go on. And there's no need for it.

## DISCUSSION

Bolhouse contends on appeal that Judge Van Hoomissen's conduct during *voir dire* violated his constitutional rights to an impartial jury, due process, equal protection and effective assistance of counsel. He relies on Alaska R.Crim.P. 24(a), which he describes as a mandatory rule requiring the court to either permit attorney-conducted *voir dire* or to ask written questions submitted by counsel. He also relies on United States Supreme Court cases holding that impairment of the right to exercise peremptory challenges is a denial of a defendant's right to an impartial jury and requires automatic reversal. *See Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759, 772 (1965).

The state contends that Alaska R.Crim.P. 24(a) gives the trial court broad discretion in conducting *voir dire* and that the trial court should be upheld unless the defendant has been precluded from obtaining an impartial jury. In support of its contention, the state cites federal cases construing the federal counterpart to Criminal Rule 24(a). *See, e.g., United States v. Giese*, 597 F.2d 1170 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *United States v. Barnes*, 604 F.2d 121 (2d Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).

The state argues that Judge Van Hoomissen's refusal to allow attorney-conducted *voir dire* was not an abuse of discretion because the judge's questions encompassed the questions previously asked by defense counsel. In addition, the state asserts that the judge-conducted *voir dire* provided an adequate basis for the effective exercise of peremptory challenges and challenges for cause.

Alaska R.Crim.P. 24(a) provides:

The court may permit the defendant or his attorney and the prosecuting attorney to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the prosecuting attorney to supplement the examination by such further inquiries as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

This rule is virtually identical to Civil Rule 47(a). There is no case law construing Alaska Criminal Rule 24(a) or Civil Rule 47(a); however, cases construing Federal R.Crim.P. 24(a) are instructive. The circuit courts agree that Federal R.Crim.P. 24(a) does not require trial courts to permit attorney-conducted *voir dire*. *See United States v. Patterson*, 648 F.2d 625, 630 (9th Cir.1981). Nor does the rule require the trial court to ask questions submitted by counsel. *United States v. Giese*, 597 F.2d at 1183. The trial court's discretion "will not be disturbed unless the *voir dire* was inadequate to test properly the qualifications of the prospective jurors. The court need not ask requested questions which are argumentative or cumulative." *United States v. Hopkinson*, 631 F.2d 665, 667 (10th Cir.1980), *cert. denied*, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1981). *See generally* 2 C. Wright, *Federal Practice and Procedure: Criminal* § 381, at 331–43 (1972); 8A J. Moore, *Moore's Federal Practice*, ¶ 24.03 (1984 rev. ed.).

Bolhouse's claim of error is almost impossible to evaluate because there is no record of the questions he wished to ask. *See United States v. Ross*, 477 F.2d 551, 552–53 (6th Cir.), *cert. denied sub. nom*, 414 U.S. 912, 94 S.Ct. 252, 38 L.Ed.2d 150 (1973) (review precluded where questions defense attorney submitted to judge are not part of record). The record reveals only one instance where defense counsel indicated that he wished to pursue a particular line of inquiry. During the judge-conducted *voir dire*, prospective juror Edward Sanders stated that he was acquainted with several law enforcement officers. The following exchange occurred:

> THE COURT: Have you or anybody close to you ever been involved in law enforcement work?
>
> MR. SANDERS: Yes, sir.
>
> THE COURT: And who is that?
>
> MR. SANDERS: Two uncles in Arizona; I've got a friend on the police department, and one on the State Troopers.
>
> THE COURT: Here in Alaska?
>
> MR. SANDERS: Yes, sir.

THE COURT: And who do you know on the city police?

MR. SANDERS: Patrolman Mahler (ph).

THE COURT: And how about the State Troopers?

MR. SANDERS: Can't even think of his name—last name right now.

THE COURT: Have you drawn any opinions or conclusions about a person accused of crime, or the criminal justice system, from any communications you've had with these people?

MR. SANDERS: No, sir.

THE COURT: Would you tend to evaluate the testimony of a police officer any different than any other witness?

MR. SANDERS: No, sir.

THE COURT: Have you, or anybody close to you, ever been the victim of a criminal act?

MR. SANDERS: No, sir.

THE COURT: Have you felt unfairly treated by any elements of the criminal justice system?

MR. SANDERS: No, sir.

THE COURT: Would you—have you formed any opinions or conclusions as to the outcome of this case?

MR. SANDERS: No.

THE COURT: Would you be able to afford the presumption of innocence to the defendant at this time?

MR. SANDERS: Yes, sir.

THE COURT: Would you have any hesitancy of acquitting the defendant unless and until you're satisfied beyond a reasonable doubt of his guilt?

MR. SANDERS: None whatsoever.

THE COURT: And would you base your verdict solely on the evidence that's received here, and would you follow the court's instructions?

MR. SANDERS: Yes, sir.

The following exchange then took place between defense counsel and Judge Van Hoomissen:

> MR. HAGEY: The questions that I would like to ask, Your Honor, pertain to things that this particular juror men-

tioned in going down the list for the answer to the court's questions.

THE COURT: What's that?

MR. HAGEY: I'd like to know how he knows these officers.

THE COURT: How he what?

MR. HAGEY: He says he knows several police officers. I'd like to know in what capacity he knows those—if they are a friend, if they are people that he's worked with.

THE COURT: Okay.

MR. HAGEY: And what his connection are with those.

THE COURT: I'm not going to ask it because he said that he would not evaluate the testimony of one of those people any different than anybody else, and he hasn't drawn any opinions or conclusions about a person accused of crime in the criminal justice system as a result of it.

Some cases do hold that the trial court is required to ask whether prospective jurors would be unduly influenced by the testimony of law enforcement officers. *See, e.g., United States v. Baldwin*, 607 F.2d 1295, 1298 (9th Cir.1979); *Sellers v. United States*, 271 F.2d 475 (D.C.Cir.1959). However, Judge Van Hoomissen did ask this question of each juror individually and he received answers adequate to assure that "prejudice would be discovered if present." *See United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir.1976). In any event, the capacity in which juror Sanders knew the officers was revealed; two were uncles and two were friends. Bolhouse cites no cases that require a trial court to elicit any additional information in this area. *See United States v. Clabaugh*, 589 F.2d 1019, 1023 (9th Cir.1979) (where two jurors indicated possible source of bias, but said that they

 Since Bolhouse cannot point to any other specific questions which he would have asked the prospective jurors, we have examined the court-conducted *voir dire* to determine whether it was generally adequate to detect bias. *Voir dire* is not to be judged question by question. The proper test is, considering the totality of the questions permitted, did counsel gain enough specific information to intelligently exercise challenges for cause and enough general information to exercise peremptory challenges. In this regard, we compare the court-conducted *voir dire* to the attorney-conducted *voir dire* that was initially permitted. The record reveals that Judge Van Hoomissen followed the pattern established by the attorneys. He asked essentially the same questions that counsel had asked during their unrestricted *voir dire*. These questions were clearly adequate to expose any bias that would arise in this kind of case.[8] The *voir dire* permitted in this case satisfied the requirement that counsel receive enough general information about individual jurors to intelligently exercise peremptory challenges.

 We recognize, however, that Alaska R.Crim.P. 24(a) requires the trial judge to permit counsel to submit questions in writing for the court's consideration. The court is not required to ask the questions but it is required to consider them. Permitting counsel to submit questions serves three important purposes. First, it alerts the trial court to any potential area of bias or prejudice or any controversial issue, known to counsel but unknown to the court, that might arise in the case.[9] Sec-

---

**8.** Bolhouse cites a number of cases which he contends stand for the proposition that the *voir dire* examination deprived him of his constitutional rights. His authorities are distinguishable. Some of them involve a trial court's erroneous refusal to excuse a juror for cause which results in the defendant's wasting a peremptory challenge. *See, e.g., United States v. Nell*, 526 F.2d 1223 (5th Cir.1976). Others involve a trial court's refusal to inquire into a particular area of potential bias during *voir dire. See, e.g., Ham*

*v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973) (trial court's refusal to examine jurors on *voir dire* as to racial prejudice); *United States v. Allsup*, 566 F.2d 68 (9th Cir. 1977) (refusal of trial judge to ask jurors about their attitudes regarding insanity defense).

**9.** One commentator has suggested:
> Those who support the attorney-conducted *voir dire* argue that inquiry into the biases of jurors requires the interviewer to have a thor-

ond, it alerts the trial court to specific concerns the parties and their counsel might have with regard to a particular potential juror. And, finally, it ensures that an appellate court will know precisely what questions counsel wished to ask but did not in deference to the trial court's ruling. In this way, the appellate court can review the trial court's exercise of discretion and determine whether a party was denied a meaningful opportunity to know the jurors that would decide his case.

■ The reference in Alaska R.Crim.P. 24(a) to written questions from counsel primarily relates to situations where the trial court decides to conduct *voir dire* prior to commencement of trial. Judge Van Hoomissen may have reasoned that five hours of uninterrupted counsel-conducted *voir dire* sufficiently alerted him to the kinds of general questions that were of concern to counsel. He may therefore have determined that strict adherence to the written question requirement was unnecessary. Counsel's prior questioning certainly disclosed their primary concerns. Nevertheless, those questions did not disclose concerns peculiar to a specific juror who might later be called. Moreover, we are not alerted to those concerns on appeal. Trial judges who wish to take over *voir dire* should adhere to the written question requirement or permit counsel an opportunity to substitute an oral offer of proof. Judge Van Hoomissen erred in not complying with the rule. We find, however, that the error was harmless.

■ Bolhouse and his alleged victims were apparently of the same race and roughly of the same age and social circumstances. The record does not reflect that Bolhouse had a prior criminal record. He had not confessed and there is no indication that he was under the influence of drugs or alcohol at the time of the alleged offenses. Most of the jurors questioned indicated

that they had never heard of the case before. Finally, Bolhouse was represented by experienced counsel. In the one situation in which he had specific questions to ask, defense counsel brought them to the attention of the trial court and made a record. We assume that if there were any other specific areas of inquiry about potential bias that he wished to cover, the record would reflect them as well. We note that Bolhouse has not indicated in his appellate brief any specific areas of inquiry that he wished to pursue. Under these circumstances, we find any error harmless beyond reasonable doubt.

### SENTENCE

Judge Van Hoomissen sentenced Bolhouse to consecutive terms of nine years with two years suspended on each count of attempted sexual assault in the first degree. Bolhouse therefore received a composite sentence of eighteen years with four years suspended. At the time of Bolhouse's offenses, attempted first-degree sexual assault was a class B felony, former AS 11.41.410(b); AS 11.31.100(d)(2), with a maximum sentence of ten years' imprisonment. The presumptive terms for second and third offenders were four years and six years respectively. AS 12.55.125(d). Under current law, Bolhouse's offenses would be class A felonies, AS 11.31.100(d)(1); AS 11.41.410(b), which carry a maximum penalty of twenty years' imprisonment. AS 12.-55.125(c). Currently, a first offender is subject to a presumptive sentence of five years unless the offense involved a firearm or serious physical injury. If either of those factors is present, the defendant is vulnerable to a seven-year presumptive term. Second and third offenders now receive presumptive terms of ten and fifteen years respectively. AS 12.55.125(c)(3)–(4).

In arguing that his sentence is excessive, Bolhouse points out that these are his first felony offenses. Bolhouse argues that, as

---

ough knowledge of the legal issues involved in the case and of the evidence to be presented by both sides. Because the trial judge does not, and should not, have such knowledge at the time of *voir dire*, it has been argued that

he is not as competent as the attorneys to question the jurors.
Suggs & Sales, *Juror Self-Disclosure in the Voir Dire: A Social Science Analysis*, 56 Ind.L.J. 245, 252 (1981) (footnote omitted).

a first felony offender, he should not receive a sentence greater than the presumptive sentence for a second offender. *Austin v. State*, 627 P.2d 657 (Alaska App. 1981). He relies on *Erhart v. State*, 656 P.2d 1199 (Alaska App.1982), in which we said:

> In the absence of substantial evidence in the record of statutory aggravating factors or factors which would arguably justify reference to a three-judge panel, we have never approved a sentence of actual imprisonment for a first offender sentenced under the Revised Code which exceeds the sentence presumed for a second offender under that code.

656 P.2d at 1201.

In applying the *Austin* rule in this case, we believe it is appropriate to consider recent amendments to the statutes, which reflect the legislature's current conception of the punishment necessary to satisfy constitutional and statutory requirements. Normally, a defendant should not receive a greater sentence under former law than he would receive if he were sentenced under current law. In *Sundberg v. State*, 652 P.2d 113, 116 (Alaska App.1982), we said:

> Nevertheless, while not binding on the trial court, the new code does give an indication of current legislative intent and, absent factors in a specific case warranting a harsher sentence, the defendant should be sentenced within the range of sentences provided by the new code, at least to the extent that his conduct corresponds exactly to conduct prohibited by a specific provision, or provisions of the new code.

Under the current code, attempted sexual assault carries a five-year presumptive term for a first offender who does not use a dangerous weapon or cause serious physical injury. There is nothing in the record to suggest that Bolhouse used a dangerous weapon or caused serious physical injury to either of his victims. Consequently, unless specific aggravating factors or extraordinary circumstances were present, his sentence for each offense should not have exceeded five years. *See Erhart*, 656 P.2d at 1201.

Judge Van Hoomissen found one aggravating factor; he characterized Bolhouse's conduct as "among the worst within its class." *See* AS 12.55.155(c)(10) (providing for aggravation of presumptive sentence when defendant's conduct is among "the most serious conduct included in the definition of the offense"). Judge Van Hoomissen essentially found that, in each case, Bolhouse's attempt came very close to constituting a completed rape. We have approved similar reasoning in *Fee v. State*, 656 P.2d 1202, 1204–05 (Alaska App.1982). *Cf. Goulden v. State*, 656 P.2d 1218, 1222 (Alaska App.1983); *Huckaby v. State*, 632 P.2d 975, 976 (Alaska App.1981).

However, when a trial court characterizes a defendant's conduct as "among the most serious" based upon a finding that the offense approximated a more serious crime, it necessarily follows that the presumptive sentences for the more serious crime provide a ceiling on an aggravated sentence for the lesser crime. At the time Bolhouse committed his offense, first-degree sexual assault was a class A felony with a six-year presumptive term for a first offender who caused serious physical injury or used a dangerous weapon, and a ten-year presumptive term for a second offender. Former AS 12.55.125(c). Under current law, there is an eight-year presumptive term for a first offender convicted of first degree sexual assault who does not use a dangerous weapon or cause serious physical injury, a ten-year presumptive sentence for a first offender who uses a dangerous weapon or causes serious injury and a fifteen year presumptive term for a second offender. AS 12.55.125(i). There is nothing in this record suggesting that Bolhouse's offenses, viewed in isolation, would have been aggravated had they resulted in completed first-degree sexual assaults. If we accept the trial court's rationale for viewing Bolhouse's offenses as aggravated, the six-year presumptive term prescribed for offenders causing serious physical injury or using a firearm should have constituted maximum sentence for each of

Bolhouse's offenses. Former AS 12.55.-125(c)(1).

We must also address the propriety of Bolhouse's total sentence under *Lacquement v. State*, 644 P.2d 856 (Alaska App. 1982). Bolhouse does not specifically challenge Judge Van Hoomissen's decision to impose consecutive sentences. We must nevertheless consider that decision; in any case in which a defendant is simultaneously sentenced for two or more crimes, all of the defendant's conduct must be considered in determining whether the composite sentence is excessive. *See Waters v. State*, 483 P.2d 199, 202 (Alaska 1971). The decision to impose consecutive rather than concurrent sentences clearly affects the total sentence to be imposed. The court must consider the totality of the defendant's conduct in choosing a total sentence which will reform the defendant and protect the public. Alaska Const. art. 1, § 12; *State v. Chaney*, 477 P.2d 441 (Alaska 1970). In *Lacquement*, we indicated that a trial court considering whether to impose concurrent or consecutive sentences should apply a two-tiered test.[10] First, the trial court must determine that the various offenses constitute distinct crimes. 644 P.2d at 858–59. We noted that prior decisions of the supreme court permitted separate sentences even though each crime was committed in the course of one general transaction and during a brief period of time as long as each crime involved a separate culpable act

and a separate intent on the part of the perpetrator. *Id.* at 859. In this case, Judge Van Hoomissen properly found that the assaults on C.D. and P.A. constituted separate offenses for which separate sentences could be imposed. *See Davenport v. State*, 543 P.2d 1204, 1208–10 (Alaska 1975).[11]

The determination that separate sentences were authorized brings us to the second tier of the *Lacquement* test. Consecutive sentences may not exceed the presumptive term for the most serious offense unless the sentencing court finds "that confinement of the defendant for the aggregate period of a consecutive sentence is necessary to protect the public." 644 P.2d at 862. While Bolhouse was not subject to presumptive sentencing, there is no reason to treat him more severely than someone who was subject to presumptive sentencing. *See Austin v. State*, 627 P.2d 657 (Alaska App.1980). Generally, a *Lacquement* finding would require a conclusion that a total sentence for all offenses equal to or less than the presumptive term for the most serious offense was insufficient to deter and rehabilitate the defendant. Such a conclusion would emphasize "isolation" as a sentencing goal, and would be the equivalent of a finding that the defendant was a dangerous or professional criminal under the ABA standards.[12] *See Houston v. State*, 648 P.2d 1024, 1027 (Alaska

---

10. Bolhouse was not sentenced under the amendments to AS 12.55.025, which require consecutive sentences under certain circumstances. It is therefore not necessary to consider the continuing vitality of *Lacquement* in light of those amendments. Arguably, the amendments apply only to the first tier of the test established in *Lacquement*. We do not decide that question.

11. We also agree that the counts charging sexual assault in the second degree merged with the convictions for attempted sexual assault in the first degree against the same victim. Judge Van Hoomissen properly concluded that separate sentences were not appropriate for the second-degree sexual assault convictions. *See Tuckfield v. State*, 621 P.2d 1350 (Alaska 1981). Bolhouse's offenses against C.D. justified one sentence and his offenses against P.A. justified a second sentence. *See supra* note 1.

12. In *Viveros v. State*, 633 P.2d 289 (Alaska App.1981), we noted that under the new ABA Standards for Criminal Justice, § 18–2.1 (2d ed. 1980), dangerousness is equated with repetitive criminality not necessarily with violence. We said:

The new standards use the phrase "dangerous or habitual offender" to describe the person for whom a long sentence may be appropriate. Standard 18–2.5(b). Standard 18–4.4(c) defines the habitual offender as someone previously convicted of two felonies, when less than five years have elapsed between the current conviction and a prior felony and when the defendant has already served a term of imprisonment in excess of a year.

633 P.2d at 291.

App.1982) (isolation is not synonomous with incarceration; as a sentencing goal, it is reserved for those who cannot be deterred or rehabilitated).

Bolhouse is a first offender. There is no indication that he has ever been convicted of a crime or served any substantial period of imprisonment. He therefore does not qualify as a dangerous or habitual offender under the ABA standards. Ordinarily, it would appear that a total sentence, including consecutive components for both of Bolhouse's offenses, should have been somewhere in the range between the current five-year presumptive term for attempted first-degree sexual assault and the eight-year presumptive term for a completed first-degree sexual assault for a first offender who does not use a dangerous weapon or cause serious physical injury. AS 12.55.125(c)(1); AS 12.55.125(i)(1).

We note, however, that Alaska courts have affirmed substantial sentences for first offenders, with unremarkable records, convicted of homicide where the circumstances surrounding the offense itself suggest a dangerously disturbed offender. *See Dulier v. State,* 511 P.2d 1058, 1061 (Alaska 1973); *Faulkenberry v. State,* 649 P.2d 951, 956–57 (Alaska App.1982); *Nelson v. State,* 619 P.2d 480, 481 (Alaska App.1980). In *Nelson,* we said:

> The circumstances of the murder in this particular case indicate that Nelson is either severely mentally disturbed or is extremely callous towards the rights and dignity of other human beings. In either event, it seems clear that Mr. Nelson is a danger to the public, and the reality is that the prospect for his rehabilitation is not good.

619 P.2d at 481.[13] Although these cases involved homicides, we believe that their reasoning should be applied to other cases of unexplained violence. In Bolhouse's case, however, the presentence report contains no psychological evaluation. A trial court should rarely sentence a youthful offender to a sentence of ten years or more without a current psychological evaluation. *See Hawthorne v. State,* 501 P.2d 155, 158 (Alaska 1972); *Robinson v. State,* 484 P.2d 686, 689–90 (Alaska 1971).

Here, Judge Van Hoomissen found that the victims were unacquainted with Bolhouse and that there were no facts indicating that they had enticed him. Bolhouse was not deterred by the fact that he found his victims in broad daylight in populated areas. There was nothing in the presentence report to indicate alcohol or drug abuse or any other problem which could be addressed by therapy. Under the circumstances, we believe that Judge Van Hoomissen could properly find that Bolhouse was either "severely mentally disturbed or extremely callous towards the rights and dignity of other human beings." Such a conclusion would support a finding of dangerousness, justifying consecutive sentences exceeding the presumptive term for the most serious offense.

On balance, we do not believe, however, that the record would support a total sentence of more than ten years' imprisonment for both offenses. Such a sentence would be twice the presumptive term currently applicable to attempted first-degree sexual assault, and would equal the maximum sentence currently permitted by the ABA standards for all but the most serious of offenders. Such a sentence would also permit supervision of Bolhouse for a substantial period of time.

We therefore must remand this matter to the superior court for resentencing. On remand, Bolhouse must receive a new sentencing hearing. We reach this conclusion

---

**13.** In *Evans v. State,* 645 P.2d 155, 163 (Alaska 1982), the supreme court said:

> Evans has demonstrated that he is a serious threat to society. In cases such as these, especially given a history of similar incidents, isolation of the offender and community condemnation must, as the superior court noted, be significant concerns in sentencing.

*Cf. Burleson v. State,* 543 P.2d 1195, 1203 (Alaska 1975) (based, in part, on adverse psychiatric report, defendant received two consecutive maximum twenty-year sentences for mayhem against two victims).

for a number of reasons. First, anticipating a reversal on appeal, Bolhouse refused to discuss the facts and circumstances surrounding the offenses with the presentence officer. He also neglected to present a psychological or psychiatric evaluation, an evaluation that could only be prepared with his cooperation. Given our affirmance of his conviction, he may wish to reconsider. A complete psychological evaluation explaining Bolhouse's crimes and his motivations, and indicating an appropriate treatment pattern might well undercut the propriety of relying on *Evans, Faulkenberry* and *Nelson* in establishing a sentence. Finally, the trial court indicated that the nature of Bolhouse's offenses called for a period of suspended time after Bolhouse leaves prison to measure his rehabilitation. The trial court may therefore decide to suspend part of the total sentence to assist Bolhouse's reentry into the community.

The judgment of the superior court is AFFIRMED. The sentence of the superior court is REVERSED and this case is REMANDED for· resentencing. Bolhouse's total sentence on remand should not exceed ten years including any suspended time.

BRYNER, Chief Judge, concurring.

I agree with the result reached by Judge Singleton on the sentencing issue. However, I prefer to set out my views separately on that issue.

Bolhouse was sentenced to serve two consecutive nine-year terms following conviction for two unrelated incidents of attempted first-degree sexual assault. A two-year portion of each sentence was suspended. Thus, Bolhouse received a total of eighteen years to serve, with four years suspended. Each of Bolhouse's offenses was, at the time, a class B felony, punishable by a maximum term of ten years' imprisonment. Former AS 11.41.410(b); AS 11.31.100(d)(2); former AS 12.55.125(d). Since Bolhouse had never previously been convicted of a crime, he was not subject to presumptive sentencing.

In *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981), we held that, in the absence of exceptional circumstances, a first felony offender should normally receive a sentence more favorable than the presumptive sentence applicable to a second felony offender for the same class of offense. Under the sentencing statutes applicable to his case, Bolhouse would have been subject to a presumptive term of four years' imprisonment for each of his offenses if he had previously been convicted of a felony. AS 12.55.125(d)(1). Thus, under der *Austin*, a sentence of nine years with two years suspended for each offense would be justified only by the existence of exceptional circumstances—either statutory aggravating factors or circumstances that might have warranted referral of the cases to a three-judge sentencing panel if presumptive sentencing applied.

In imposing sentence, Judge Van Hoomissen made findings consistent with the existence of one aggravating factor: he found that Bolhouse's conduct was among the most serious within the definition of the offense. *See* AS 12.55.155(c)(10). Judge Van Hoomissen based this finding on the manner in which Bolhouse committed his offenses and on the conclusion that Bolhouse's attempted sexual assaults came close to completed acts of first-degree sexual assault.

 I do not believe that Judge Van Hoomissen erred in concluding that Bolhouse's offenses bordered on completed acts of first-degree sexual assault. However, standing alone, this conclusion would not justify imposition of a near-maximum term. Had Bolhouse·actually been convicted of first-degree sexual assault, as a first offender he would have been subject to presumptive terms of six years if he had used a firearm in committing his offenses. Former AS 12.55.125(c)(1). The circumstances of Bolhouse's offenses, viewed in their entirety, cannot reasonably be characterized as being more aggravated than a case of first-degree sexual assault in which a firearm is used. Accordingly, I cannot conclude that the aggravating circumstances relied on by Judge Van Hoomissen in this case would justify imposition of indi-

vidual sentences exceeding the presumptive terms that would have applied if Bolhouse had actually been convicted of committing first-degree sexual assault while using a firearm.

A similar conclusion is supported by an analysis of Bolhouse's sentences in light of currently applicable law. Recent amendments to the statutes governing sentencing for sexual assault are relevant, since they embody the most recent expression of legislative intent. *See Sundberg v. State*, 636 P.2d 619, 622 (Alaska App.1981). Certainly, the sentencing provisions in effect at the time of Bolhouse's offenses govern. However, when sentencing provisions are amended by the legislature, a person who is being sentenced under prior law should normally not receive a greater sentence than that person would receive under the amended law. *See Wright v. State*, 651 P.2d 846, 849 (Alaska App.1982); *Sundberg v. State*, 636 P.2d at 622.

Attempted first-degree sexual assault is currently a class A felony. AS 11.41.-410(b); AS 11.31.100(d)(1). Where, as in this case, a class A felony other than manslaughter is committed by a first felony offender who does not carry a firearm, use a dangerous instrument or cause serious physical injury, the offense is subject to a presumptive term of five years. AS 12.55.-125(c)(1), (2). Thus, under present law, Bolhouse would be subject to a presumptive term of five years for each of his offenses.

Considering Bolhouse's case in the context of the presumptive sentencing structure applicable at the time of his offenses and under current law, I would conclude that individual sentences exceeding five years of unsuspended imprisonment for each offense would be clearly mistaken.[1]

Separate consideration must also be given to the totality of Bolhouse's sentence. Since Bolhouse's offenses were committed at different times and involved separate conduct and different victims, there is little doubt that consecutive sentencing was permissible. *See Davenport v. State*, 543 P.2d 1204, 1210 (Alaska 1975). However, the sentencing court could not properly impose consecutive sentences exceeding the maximum or presumptive sentences prescribed for the single most serious count unless the court expressly found that Bolhouse was a dangerous offender and that it was necessary to confine him for the full period of the consecutive sentences in order to protect the public. *See Mutschler v. State*, 560 P.2d 377, 381 (Alaska 1977); *Lacquement v. State*, 644 P.2d 856, 862 (Alaska App.1982). In view of Bolhouse's lack of a prior criminal record, and given the fact that he did not use a dangerous instrument or cause serious physical injury, I do not think the record supports the conclusion that confinement of Bolhouse was necessary for a period greater than the ten-year maximum sentence for a single class B felony. *See* ABA Standards for Criminal Justice, § 18–2.1 (2d ed. 1980); *Viveros v. State*, 633 P.2d 289, 291 (Alaska App.1981). Furthermore, I believe a total of more than ten years of unsuspended incarceration would be inconsistent with the *Chaney* sentencing criteria,[2] since the record would not justify a conclusion that Bolhouse cannot be rehabilitated or deterred from engaging in similar misconduct in the future.

On the other hand, Bolhouse committed two separate but similar crimes in-

---

1. A different conclusion might be warranted if Bolhouse had been sentenced concurrently for his offenses. If concurrent sentences had been imposed, it would be appropriate to consider the totality of Bolhouse's conduct in determining the appropriateness of his sentence. At least in cases to which presumptive sentencing does not directly apply, a sentence that would be excessive for a single offense might be justified if imposed concurrently with sentences for other, separately punishable crimes. *See Waters v.*

*State*, 483 P.2d 199, 202 (Alaska 1971). We have not applied the *Waters* rationale to cases that are subject to presumptive sentencing. *See Juneby v. State*, 641 P.2d 823 (Alaska App.1982), *modified on rehearing*, 665 P.2d 30 (Alaska App. 1983).

2. *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

volving violent, sexual attacks. Each crime resulted in at least some physical injury to the victim and posed a clear threat of serious physical injury. Bolhouse committed the second offense despite the fact that he had nearly been apprehended during commission of the first. There is little in the record to shed light on Bolhouse's precise motivation for committing these crimes, and there is little to indicate that his prospects for rehabilitation are particularly favorable. Given the seriousness of Bolhouse's offenses and their repetitive and unexplained nature, I believe the record fully supports a finding that Bolhouse poses sufficient danger to the public to require his confinement for a period of ten years, the maximum term for a single class B felony.

**3.** I agree with Judge Singleton's disposition of the peremptory challenge and jury *voir dire* issues.

■ I would therefore conclude that the sentences imposed by the superior court are excessive, and I would remand for resentencing, with instructions to impose consecutive five-year sentences.[3]

COATS, Judge, concurring.

■ I agree with Judge Singleton's disposition of the jury selection issue. I also agree that Bolhouse's sentence should not exceed ten years and I join in Chief Judge Bryner's explanation of that disposition.