Jerry Wayne DEAL, Appellant,

v.

STATE of Alaska, Appellee.

No. 6776.

Court of Appeals of Alaska.

Feb. 25, 1983.

William F. Morse, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Thomas M. Wardell, Dist. Atty., Kenai, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

PER CURIAM.

Jerry Wayne Deal was convicted of burglary in a dwelling, former AS 11.20.080, and burglary not in a dwelling, former AS 11.20.100. Former AS 11.20.080 provided:

A person who breaks and enters a dwelling house with intent to commit a crime in it, or having entered with that intent, breaks a dwelling house or is armed with a dangerous weapon in it, or assaults a person lawfully in it is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than one year nor more than ten years. However, if the burglary is committed at nighttime, it is punishable by imprisonment for not less than one year nor more than 15 years. If a human being is within the dwelling at the time of the burglary during the nighttime or daytime, it is punishable by imprisonment for not less than one year nor more than 20 years.

Former AS 11.20.100 provided:

A person who breaks and enters a building within the curtilage of a dwelling house but not forming a part of it, or who breaks and enters [any] other structure . . . in which property is kept, with intent to steal or to commit a felony in it, is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than two nor more than five years.

The indictment charging Deal with burglary in a dwelling specified that the offense occurred in the nighttime while the dwelling was occupied. He was therefore subject to a twenty-year sentence. The bur-glary not in a dwelling was predicated upon a separate charge that Deal broke into a Ford Bronco and stole property from inside it.

The trial judge sentenced Deal to concurrent sentences of fifteen years for the burglary in a dwelling and five years for the burglary not in a dwelling. He suspended all of the time, however, and placed Deal on probation on certain conditions, including the requirement that Deal complete the Akeela House program and obtain a high school equivalent degree. Akeela House is a private residential therapeutic community.

Deal spent eighteen months at Akeela House and graduated from the program. He also obtained his G.E.D. After leaving Akeela House, Deal experienced difficulty in finding accomodations. He violated a number of the conditions of his probation. He admitted failing to seek employment and failing to keep appointments with his probation officer. In addition, he was charged with a probation violation for assisting two other men in burning a motor vehicle to obtain the insurance proceeds. This action also resulted in a separate charge of criminal mischief in the second degree, AS 11.46.482 (a class C felony). Deal was convicted of this offense. We affirmed his conviction in *Deal v. State*, 657 P.2d 404 (Alaska App., 1983). Deal received a two-year presumptive sentence concurrent with the sentences under consideration here.

Based upon his admissions and the criminal conviction, the trial court revoked Deal's probation and sentenced him to serve the two sentences previously imposed. Deal appeals contending that a fifteen-year sentence is excessive. We agree and reverse, directing that the total sentence on remand not exceed ten years to serve.

Deal was born October 29, 1960, and is currently twenty-two years old. His history up until his original sentencing for the two burglaries was summarized by the probation officer assigned to prepare the presentence report as follows:

A review of the numerous juvenile institutional files reveal the following information: The defendant [Jerry Wayne Deal] was originally adjudicated delinquent on February 22, 1977, on a charge of Larceny In A Building and Buying and Receiving Stolen Property. He was at this time living with his father and brothers in the Place Motel in Kenai. He reported that his friends tempted him to steal from rooms in the motel and he obtained a master key and used this to get into the rooms. This activity continued for approximately three weeks before he was apprehended by the manager of the motel. Following adjudication, he resided with his older brother and his wife in Soldotna. The defendant was unable to get along with his sister-in-law and in fact got into [a] physical altercation with her and was placed at McLaughlin Youth Center. Because of harassment and scape-goating in detention, he was placed at the Kenai Care Center but was removed after approximately one month because of breaking into the counselor's office. He was then placed at Cookson Hills Christian School in Homer where he stayed three days. During that time, he ran [away] twice and broke into the Foster home while the Foster family was gone. He was then placed back at McLaughlin Youth Center in detention and remained there from May until placement could be successfully accomplished at Brown's Schools in Austin, Texas. He remained at Brown Schools from October of 1977 until March of 1978 when he was returned to the State of Alaska as unamenable to placement at Brown Schools. He was discharged because of unresponsiveness to treatment, runaway, and increasing assaultive behavior. He was at that point returned to M.Y.C. and reclassified for the Closed Treatment Unit. The defendant was in the Closed Treatment Unit at McLaughlin from May until September of 1978; he was then transferred into the Cottage Program. Jerry seemed to make good progress in the Cottage Program in spite of a few problems with his stealing and drug involvement. He was eventually released from McLaughlin Youth Center and Juvenile Probation in July of 1979. He was accepted at the Skill Center in the summer of 1979 but spent only a brief time there before he became involved in thefts and left the school returning to the home of his parents in Soldotna. Within a matter of months he had reinvolved himself in criminal activities only this time he was 18 years of age and was charged with these incidents as an adult.

The record reflects that Deal was charged with four counts of burglary in a dwelling, all of the events occurring on October 22, 1979, and the one count of burglary not in a dwelling involving the Ford Bronco which allegedly occurred on the same date. Three of the burglary in a dwelling counts were dismissed; Deal entered pleas on the remaining charges.

The probation officer summarized her conclusions as follows:

It appears the Division of Corrections has in the past attempted to afford Mr. Deal every opportunity to involve himself in training, medical help and therapy to provide him with the skills necessary to function as a law-abiding citizen. He simply has not had the motivation to accept help. There is no question but what he has the ability to function successfully and to maintain himself within society's acceptable limits. He seems to consciously and purposely act in an illegal manner as a quest for excitement and a diversion for what is viewed as normal behavior. It appears that Mr. Deal most successfully responds to a punishment and/or consequences type of conditioning and to release the defendant on Probation at the present time simply does not appear justified.

Mr. Deal, by his own admission, burglarized numerous houses and automobiles with little thought to the consequences of his actions but only to the excitement of the moment. The residence with which he is charged with burglary in this incident is one in which he entered in the night time and when people were sleep-

ing which could have resulted in violent and tragic consequences for the defendant and the victims. Also, he did at one point have on his person a .38 caliber revolver although he indicated to this Officer that he certainly had no intention of using it. In view of these facts and of Mr. Deal's prior history, incarceration for the protection of society and hopefully for the rehabilitation of the offender appears most appropriate.

Deal was sentenced on February 22, 1980, and immediately took up residence at Akeela House where he remained until his release on July 29, 1981. During the summer of 1981 Deal refrained from committing criminal acts. He did not maintain contact with his probation officer and did not actively seek employment.

On September 26, 1981, Deal and two others entered into a conspiracy to burn a 1979 Chrysler New Yorker valued at $7700. The Chrysler belonged to one of the trio and their intent was to destroy the vehicle and claim the insurance proceeds. They discussed their conspiracy in the presence of a taxicab driver who reported the conversation to the police leading to their arrest and conviction.

At the initial sentencing proceeding, Judge Hanson concluded that Deal was a worst offender. He based this conclusion on Deal's virtually continuous involvement in theft-related offenses during his brief vacations from juvenile detention and Deal's inability to respond to any of the varied rehabilitation programs offered him by the Division of Corrections. Judge Hanson imposed a near maximum fifteen-year sentence on Deal for burglary in an occupied dwelling at night to reflect this worst offender characterization, but concluded that the community should not be required to support Deal for fifteen years as long as there was the possibility that the Akeela House program could turn him around. Expressing reservations about Deal's ability to be rehabilitated, the court nevertheless allowed him the opportunity to participate in the Akeela House program. The record reflects that Deal successfully completed that program. Nevertheless within three months of graduation, Deal committed a class C felony.

 Under these circumstances Judge Hanson was justified in revoking Deal's probation. *See Kanipe v. State,* 620 P.2d 678 (Alaska 1980). Nevertheless, as the supreme court noted in *Kanipe:* "When a sentence is imposed following probation revocation, the sentencing judge must consider the same criteria as those considered initially upon conviction of the underlying offense." *Id.* at 679 (citations omitted). Particularly relevant in this regard is the supreme court's decision in *Whittlesey v. State,* 626 P.2d 1066 (Alaska 1980), where the court said:

In the time since the crime, a new criminal code has substantially revised the length of permissible sentences for many crimes .... Legislative guidelines setting standards concerning mitigating and aggravating factors have been expressed .... The State and Whittlesey, in their briefs, take opposite positions with respect to the significance of the sentencing provisions of the new criminal code for cases in which they do not control. The comprehensive and explicit standards of the new criminal code are the most recent expressions of legislative policy in the highly subjective realm of sentencing. They are the result of long and careful deliberation by that body. We agree with Whittlesey that the sentencing provisions of the new criminal code are useful and relevant in the determination of an appropriate sentence under the present circumstances ....

*Id.* at 1068 (footnotes omitted).

Deal's most serious offense under the new code would be burglary in the first degree, AS 11.46.300 (a class B felony). The maximum sentence for a class B felony is ten years incarceration. AS 12.55.125(d). The presumptive terms are respectively four years for a second offender and six years for a third offender.

 Deal's extensive juvenile record and recurrent failures on probation coupled

with his recent class C felony conviction warrant the imposition of a sentence in excess of the presumptive sentence for a second or third felony offender. *See Austin v. State,* 627 P.2d 657 (Alaska App.1981) (in the absence of extraordinary circumstances a first felony offender should not receive a sentence in excess of the presumptive term for a second felony offender; an extensive juvenile record may support a finding of exceptional circumstances). However, it could not result in a sentence in excess of ten years under the new code. We believe this ten-year limitation should only be exceeded in the most unusual of cases.

We note that the revised ABA Standards as well as past decisions of Alaska courts recommend a maximum ten-year sentence in the absence of extraordinary circumstances. *Hansen v. State,* 657 P.2d 862 (Alaska App.1983); *Viveros v. State,* 633 P.2d 289, 291 (Alaska App.1981); ABA Standards for Criminal Justice § 18–2.1(e) (2d ed. 1980). *Cf. Donlun v. State,* 527 P.2d 472, 475 (Alaska 1974).

In *Sundberg v. State,* 636 P.2d 619 (Alaska App.1981) (*Sundberg I*), we questioned whether a defendant should ever receive a sentence under the old code which would be greater than one which the same conduct would permit under the revised code. After remand we permitted such a sentence because of Sundberg's substantial record of adult felony convictions. *Sundberg v. State,* 652 P.2d 113 (Alaska App.1982) (*Sundberg II*). With the exception of Deal's current class C felony conviction, Deal's record, while extensive, was entirely accumulated as a juvenile or shortly after he attained his majority.

Finally, we recognize that the state initially charged Deal with four separate burglaries to which he confessed. The state might not have willingly dismissed the other counts if it had anticipated a ten-year maximum sentence. Judge Hansen could have initially given Deal consecutive rather than concurrent sentences for his burglaries and Judge Johnstone might have given Deal a consecutive sentence for the criminal

mischief conviction if Deal had not been facing a fifteen-year potential sentence on a probation revocation at that time. These considerations do not warrant approval of the sentence imposed.

 The ten-year sentence we permit for Deal is equal to the maximum sentence he could receive under current law for the most serious offense for which he was convicted, first-degree burglary. Before that term could be exceeded by imposition of consecutive sentences, the court imposing a consecutive sentence would have to find that Deal's imprisonment for the entire period was necessary to protect the public. *Mutschler v. State,* 560 P.2d 377, 380 (Alaska 1977). *Cf. Lacquement v. State,* 644 P.2d 856, 862 (Alaska App.1982) (when aggregate of consecutive sentences exceeds applicable presumptive term for most serious offense, even though maximum sentence is not exceeded, it is necessary to determine that such a sentence is needed to protect the public from serious danger). Under the totality of the circumstances, a finding that Deal should be imprisoned for more than ten years to protect the public would not be sustainable. We base this conclusion on Deal's youth, the absence of violence in his offenses, and the fact that he has never served more than two years in custody for any prior conviction.

The judgment of the superior court is REVERSED. The sentence is VACATED and this case REMANDED for resentencing. On remand the sentence imposed shall not exceed ten years to serve.

SINGLETON, Judge, dissenting.

Given Deal's extensive criminal record, his failure to learn from past convictions and his inability to benefit from rehabilitative treatment, I believe the state has established factors in this case warranting a harsher sentence than could have been obtained under the new code. *See Sundberg v. State,* 652 P.2d 113, 116 (Alaska App.1982) (*Sundberg II*). I note that Deal confessed to committing a number of burglaries under circumstances for which the new code would permit separate convictions

and consecutive sentences. *See, e.g.,* 2 Senate Journal, Supplement No. 47, at 156–59 (June 12, 1978) (Senate committee report interpreting AS 12.55.025(e) and AS 12.55.-145(a)(3); commission of three burglaries involving three buildings in a single day would not be considered a "single, continuous criminal episode"). Naturally, the state's decision to accept a plea to two counts and dismiss the other counts despite Deal's admissions and tender of restitution as to all of the incidents must be evaluated in light of the laws which then existed. It seems singularly inappropriate to fashion a ten-year maximum sentence under these circumstances. This is particularly true when we consider the sentence Judge Johnstone imposed on Deal for his separate criminal mischief conviction.

In light of our decision in *Linn v. State,* 658 P.2d 150 (Alaska App.1983), Deal's prior burglaries would count as two separate convictions so that he should have been sentenced as a third felony offender for purposes of presumptive sentencing for his criminal mischief conviction. The presumptive sentence for a third class C felony offender is three years. AS 12.55.125(3)(2). Deal, in fact, received a two-year concurrent sentence for his criminal mischief conviction. Judge Johnstone most likely relied on Deal's having fifteen years to serve when he made the presumptive sentence concurrent despite a strong admonition from the supreme court to make all sentences imposed on those who commit felonies while on probation or parole consecutive to the suspended time remaining on the probated sentence. *See State v. Wortham,* 537 P.2d 1117, 1121 (Alaska 1975).

Deal is a danger to the community. He has two or more adult felony convictions within the past five years and served an adult sentence in excess of one year if we treat his stay at the Akeela House as time in custody. *See Lock v. State,* 609 P.2d 539, 542 (Alaska 1980). His conduct would therefore permit a sentence of more than ten years as a habitual offender under the revised ABA Standards and prior Alaska law. *See Viveros v. State,* 633 P.2d 289, 291 (Alaska App.1981). I would not find that Judge Hansen abused his discretion in concluding that a minimum of fifteen years incarceration was required to insure that the community was protected against Deal. I would affirm the sentence of the trial court.