James A. TATE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–723.

Court of Appeals of Alaska.

Dec. 20, 1985.

---

Cameron W. Leonard, Asst. Public Defender, Fairbanks and Dana Fabe, Public Defender, Anchorage, for appellant.

Alan Hooper, Asst. Dist. Atty. and Harry L. Davis, Dist. Atty., Fairbanks and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

SINGLETON, Judge.

James A. Tate pled *nolo contendere* and was convicted of burglary in the second degree, a class C felony. AS 11.46.310. Tate is a first felony offender. The maximum penalty for a class C felony is five years' imprisonment. AS 12.55.125(e). Presumptive terms are, respectively, two and three years for second and third felony offenders. *Id.* Superior Court Judge Gerald J. Van Hoomissen sentenced Tate to a term of five years with three suspended. Tate appeals, contending that the sentence is excessive. We agree and reverse.

James Tate and Donald L. Bumpus broke into a Fairbanks gas station at four o'clock in the morning on August 28, 1984. Officer Donald Wagner of the Fairbanks Police Department responded to a report of a burglary in progress and apprehended Tate and Bumpus in the act of stealing money from the service station. Further investigation indicated that Bumpus had used a hammer to break a window and gain entry to the service station. Tate later said that the two hoped to steal enough money to rent a room and hire the services of some prostitutes.

Tate has no prior felony convictions. He does have an extensive misdemeanor record which began in 1982 and continued up until his apprehension for the instant offense. Most significant are Tate's four prior shoplifting convictions for which he was required to serve respectively, five days in 1982, three days in 1982, 20 days in 1983, and an additional 15 days in 1983. It also appears that he failed to comply with certain conditions of probation in 1984, resulting in revocation of probation and the imposition of a consecutive sentence, and that subsequent probation revocations occurred up until his apprehension for the instant felony. The trial court noted that Tate was jailed on July 24, 1984, for his most recent probation revocation and committed the instant offense on August 29, 1984.

Judge Van Hoomissen carefully considered the *Chaney* criteria.[1] Judge Van Hoomissen referred to Tate's misdemeanor record and said:

That [the fact that Tate has past convictions and incarcerations for shoplifting, as well as probation violations] does not militate in your favor and it indicates to me however your good intentions are, you have some difficulty carrying it out when you are out from under the gun. And you haven't been impressed with the court's orders before. I think rehabilitation is going to require that you serve a substantial period of time in order to drive home to you that people are not going to put up with this. I think isolation is necessary in order to establish that fact. I don't know whether what I do to you will deter anybody else that's similarly inclined, but I hope it'll deter you because from now on you're going to be looking at very substantial sentences if you can't keep your hands off other people's property. The community condemnation for this is high. People expect you to keep your hands off of their property just as you have a right to expect they'll keep their hands off of yours. I can't see too many mitigating circumstances in this except your age [27]. You've made commitments before when you got out of school and got your—or got out of the service you were going to get your G.E.D. and be a—go on to be a geologist. Now, you're looking forward to marriage and a job and you're going to have to be able to raise your family without do—getting the money through this means. And you really haven't got an awful lot of wherewithal to do it. You're going to need some specialized training. And I think part of that training is to drive home to you the fact that nobody's going to put up with this. That being the fact, I think a substantial period of probation is in

order. It'll be the judgment of the court that you be committed to the custody of the Commissioner of Health and Social Services for a period of five years and that three years of that sentence will be suspended. You've already spent 84 days in jail and you're entitled to the credit for the time served. But it is the intention of the court that you serve more than the time recommended by the Department of Corrections and substantially more than recommended by your attorney.

## DISCUSSION

Tate bases his appeal on our decision in *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981) where we said:

Normally a first [felony] offender should receive a more favorable sentence than the presumptive sentence for second offender. It is clear this rule should be violated only in an exceptional case.

██ This appeal therefore presents a single issue. Does an extensive misdemeanor record, covering a period of two years and highlighted by four shoplifting convictions, and multiple probation revocations, constitute the kind of exceptional case that would warrant a sentence for a first felony offender convicted of a property crime that exceeds the presumptive term for a second felony offender? We conclude that it does not. We believe this case is governed by *Brezenoff v. State*, 658 P.2d 1359 (Alaska App.1983). *But see Mathison v. State*, 687 P.2d 930, 931 (Alaska App.1984), and *Hansen v. State*, 657 P.2d 862, 863–64 (Alaska App.1983). In *Brezenoff* we interpreted the *Austin* rule as holding that a first felony offender must receive a more favorable sentence than he or she would have received as a second felony offender committing the same crime under the same circumstances. *Brezenoff v. State*, 658 P.2d at 1362. We emphasized that our

---

1. *State v. Chaney*, 477 P.2d 441 (Alaska 1970): (1) rehabilitation of the offender; (2) protection of society from future criminal conduct of the offender; (3) deterrence of the offender; (4) deterrence of members of society with tendencies towards similar criminal behavior; and (5) community condemnation or reaffirmation of societal norms for the purpose of maintaining respect for those norms. 477 P.2d at 444.

primary focus would be on the term of imprisonment the offender was required to serve, giving secondary consideration to any suspended sentence. Thus we said:

> Where the total sentence received by a first offender exceeds the presumptive sentence for a second offender but the period of actual imprisonment is substantially less, we will conclude that the total sentence meets the *Austin* requirement of a substantially more favorable sentence for the first offender. [Citation omitted.] Where, however, the actual period of imprisonment equals or exceeds the presumptive term for a second offender, we will require [a finding of] aggravating factors [AS 12.55.155(c)] or [a finding of] extraordinary circumstances [AS 12.55.165–.175] to justify additional time even if it is suspended. [Citation omitted.]

658 P.2d at 1362 (footnote omitted).

Tate received a period of actual imprisonment equal to the presumptive term for a second felony offender convicted of a class C felony. In addition, he received suspended time. In order to affirm this sentence, and to ensure that Tate received a more favorable sentence than he would have received as a second felony offender committing the same crime under the same circumstances, *Brezenoff* and *Austin* require the presence of aggravating factors or extraordinary circumstances in the record. Such aggravating factors or extraordinary circumstances are not present.

In evaluating the sentencing record in *Austin,* the trial court found no specific aggravating factors, nor did we. While our discussion of Austin's record and the circumstances of his offense did not explicitly make this point, our subsequent cases make it clear that we viewed Austin's case as one that, had Austin been a second felony offender, would have justified referral to a three-judge panel for consideration of imposition of a sentence in excess of the two-year presumptive term for a class C felony. *See Bolhouse v. State,* 687 P.2d 1166, 1174 (Alaska App.1984); *Peetook v. State,* 655 P.2d 1308, 1310–11 (Alaska App.

1982); AS 12.55.165–.175 (establishing standards for referral to three-judge panel). We noted that Austin's joyriding crime was aggravated by his attempt to elude the police, resulting in a collision and damage to three vehicles, including the stolen car. *See* AS 12.55.155(c)(10) (conduct among the most serious contemplated within the definition of the offense). More significant in our view, however, was Austin's extensive juvenile record. As we said:

> The most important factor which supports the sentence which was imposed [three years] is the extensive juvenile record of the defendant. Austin was only eighteen at the time of this incident and had not been convicted of a felony as an adult, but he had a long juvenile record which started in 1968 when he was seven years old. The presentence report outlines constant and numerous offenses and probation violations. Also, the report, in its evaluation of Austin, was concerned with the "almost continuous" nature in which offenses were committed. *Many of these charges would have been felonies* if the defendant had been an adult at the time of the offense.

627 P.2d at 658 (emphasis added; footnotes omitted).

We elaborated on Austin's record as follows:

> Austin's record is so extensive and involved so many offenses that it is difficult to list them all. According to the presentence report, his record includes several burglaries and theft offenses. Significantly, Austin's record includes five different incidents of joyriding. Austin has been placed in various juvenile institutions and programs as a result of his juvenile offenses. Upon release, his pattern of behavior has been to commit additional offenses. The record also shows Austin was convicted of a charge of criminal trespass in the second degree while he was released pending sentencing on the current charge.

627 P.2d at 658 n. 3.

Given Austin's virtually continuous course of criminal conduct from the age of

seven until his first felony conviction at eighteen, given his substantial period of incarceration in juvenile institutions, and given the fact that a number of his prior juvenile incidents would have constituted felonies had Austin been an adult, it would have been permissible to conclude that his case was among those contemplated in AS 12.55.165–.175 for referral to a three-judge panel. It was thus the kind of extraordinary case that would warrant a sentence for a first felony offender equal to or greater than the presumptive sentence for a second felony offender.

In contrast, Tate's criminal record occupied a period of two years. It does not appear he had a juvenile record. None of Tate's offenses bordered on felony convictions. Significantly, prior to his instant conviction, Tate had never served a continuous period of incarceration in excess of thirty days. His total prior jail time for all his shoplifting offenses apparently accumulated to less than forty-five days' imprisonment. We do not mean to minimize the serious problem that offenders like Tate pose. Nevertheless, if we ignore Tate's record, it is arguable that the appropriate sentence for this case, a second degree burglary, might have been probation in combination with restitution. *Leuch v. State*, 633 P.2d 1006, 1014 n. 22 (Alaska 1981) (defining probation as a sentence of sixty days or less). Tate's misdemeanor record, given its continuous nature and the short period of time elapsing between his most recent offense and the instant offense, clearly warranted a sentence in excess of sixty days' incarceration. Nevertheless, *Leuch* teaches that the trial court should not impose substantial periods of imprisonment on someone who has not been subjected to lesser periods of imprisonment.[2] At the time of sentencing, Tate had already served eighty-nine days in jail.

The trial court could certainly have concluded that additional time in jail was necessary to deter and rehabilitate Tate. A sentence of up to two years would not have been clearly mistaken. In addition, the trial court's concerns regarding Tate's amenability to rehabilitation after he completed his sentence of incarceration would have warranted suspended time. The record would not, in our view, however, warrant a total sentence for Tate in excess of two years including suspended time. *Sears v. State*, 653 P.2d 349 (Alaska App.1982). A sentence of five years with three years suspended is clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence of the superior court is VACATED and this case REMANDED for resentencing to a period not to exceed two years with one year suspended.

---

**2.** In *State v. Graybill*, 695 P.2d 725 (Alaska 1985), the supreme court affirmed a composite of consecutive sentences totalling seven years with five and one-half years suspended imposed on a misdemeanant convicted of twenty fish and game violations. *Id.* at 731. The defendant had a twenty-year record of fish and game viola-

tions spanning the years 1962 to 1982 and was on probation at the time he committed the twenty offenses for which he was sentenced. Graybill's relative maturity, the length of his criminal record and his established immunity from rehabilitation serve to distinguish Graybill's case from Tate's.