**Samuel O. WOOD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–747.**

Court of Appeals of Alaska.

Jan. 17, 1986.

Rehearing Denied Feb. 4, 1986.

Barbara K. Brink, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Julie Werner-Simon, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and SINGLETON and SOUTER *, JJ.

SINGLETON, Judge.

Samuel O. Wood pled no contest and was convicted of one count of burglary in the first degree, a class B felony, AS 11.46.-300(a)(1), and one count of burglary in the second degree, a class C felony, AS 11.46.-310(a). Wood is a first felony offender. A second felony offender convicted of burglary in the first degree would be subject to a four-year presumptive term, while a second felony offender convicted of burglary in the second degree would be subject to a two-year presumptive term. AS 12.55.-125(d)(1); AS 12.55.125(e)(1). Judge Carlson sentenced Wood to four years for count I, and eighteen months for count II, to be served consecutively. No part of the sentence was suspended. Thus, Wood's total sentence is five and one-half years. Wood appealed contending that his total sentence is excessive. We agree and remand for resentencing.

## THE OFFENSE

On March 5, 1984, Wood gained entrance to the unoccupied residence of an acquaintance, William M. Sutherland, by breaking a window while Sutherland was at work. Wood stole a number of items, including a clock-radio, a mini-recorder, some stereo equipment, some record albums, a wrist watch, jewelry and coins. The total value of the stolen items was approximately $3,140.

On April 16, 1984, at approximately 11:30 p.m., police investigating a burglary of a taco wagon discovered the defendant and a juvenile inside. It appears that Wood and his accomplice rifled the cash register, then stole food.

## THE OFFENDER

Samuel O. Wood was born on September 17, 1965, and was twenty years of age when sentenced. Wood's first contact with the juvenile justice system occurred on December 7, 1977 shortly after Wood's twelfth birthday, when he was informally adjusted for shoplifting a Playboy magazine. A little more than two years later, in January of 1980, he was found intoxicated and lodged for three days at McLaughlin Youth Center. He was found intoxicated a second time on February 29, 1980, and spent seven days in McLaughlin. One month later on March 19, 1980, Wood, approximately fourteen and one-half years old, was adjudicated delinquent for acts which, if committed by an adult, would have been two counts of robbery in the first degree. Wood met two children on a People Mover bus and attempted to extort money from them at knife point. One of the minors had only a bus pass, which he turned over to Wood; the other minor had nothing. Wood accompanied them to the home of one of the minors where he was given $5. Wood left when he learned the mother was at home. For these offenses Wood was institutionalized for approximately three and one-half years, initially at McLaughlin Youth Center and later at the Yellowstone Boys and Girls Ranch in Billings, Montana. He remained in state custody from March of 1980 until late November of 1983.

On December 29, 1983, approximately eight days after being released from juvenile custody, Wood committed an assault which resulted in a suspended imposition of sentence and 180 days probation. Judgment was set aside on July 5, 1984. In the interim, on April 27, 1984, Wood was convicted of misdemeanor criminal mischief in the third degree and received a further suspended imposition of sentence for one year conditioned upon twenty days in jail, and restitution.

During his approximately three and one-half years in state custody, Wood accumulated a number of psychiatric and psycho-

* Souter, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

logical evaluations. Wood has been diagnosed a manic-depressive and was prescribed Lithium by his treating physician to minimize mood swings. It appears that Wood's depressive symptoms respond well to medication, but that undesirable side effects have made medication unattractive to Wood in the past and led to his refusal to take it except under pressure. The record reflects that while incarcerated at the Cook Inlet pretrial facility Wood sleeps all day, ignores personal hygiene and refuses to cooperate with the staff. The record does not reflect that he is currently receiving medication.

Wood's most recent psychological evaluation was performed on September 23, 1983, shortly before Wood's release from juvenile custody, by James F. Harper, Ph.D., a clinical psychologist. Dr. Harper's conclusions were as follows:

> Sam appears to show only a minimally receptive attitude towards change. He may attempt to act in a clever, manipulative way after early hesitations about therapy recede. However, Sam does not appear to be significantly disturbed about his inter-personal deficits, nor does he seem particularly concerned about the well-being of others. A fundamental goal of therapy must be that of guiding him to be more thoughtful about the needs of others and accepting the constraints and the responsibilities of family and social living. This will require strengthening his capacity to face shortcomings or irresponsibilities in a very frank manner. Care must be taken in this regard not to be deceived by superficial compliance with these efforts. Sam appears to be a young man who is devoid of any significant interpersonal contacts, and his motivation to strengthen his affective bonds is very poor. [T]his examiner doubts that Sam feels much empathy for others, and overall he appears to be quite self-satisfied. His narcissism does not arise out of any particular anti-social beliefs, but rather reflects an exhibitionistic and self-enhancing nature. His relationships with others will primarily be directed towards meeting his needs, rather than towards the affective warmth involved or towards more altruistic roles. Sam will have a great deal of difficulty understanding how others respond to his manipulation, and he needs a great deal of confrontation and feedback in this area, to understand how it is, in fact, he may help others.

Wood's presentence report was generally unfavorable. The presentence officer recommended that Wood be given a substantial period of time to serve and be ineligible for parole release until such time as a psychologist or psychiatrist was prepared to certify that he was no longer a danger to society.[1]

1. In these evaluations the presentence officers made the following comments regarding Wood:
> As a juvenile, Mr. Wood spent approximately 3 years, 9 months under the custody of the Department of Family and Youth Services. Less than 3 months after his release from custody, the first of the two present offenses occurred. In his statement he expresses no thoughts or feelings towards the victim and is devoid of any remorse. He indicates that both offenses occurred under the influence of alcohol. Treatment personnel repeatedly warned [Wood] of the possibility of hostile behavior towards others if he consumed drugs or alcohol.
>
> At age 19, he appears to have worn out his welcome at home. His education is incomplete and his work history is limited. While on bail release he alienated his last employer. He has severe long-standing emotional problems and is seriously addicted to alcohol. Presently he seems unable to cope with others, whether in the institution or in open society. Extensive behavior changes are needed if he is to function in a nonviolent and lawful manner in society. There is little to indicate he is ready to make these changes and he seems to be regressing. Mr. Wood is a deeply disturbed young man who either is unwilling or unable to conform to social norms. Despite all efforts to treat him, treatment personnel note minimal improvement. Presently he represents a danger to himself and others.
>
> Time to serve for these offenses is recommended to express condemnation for his repeated criminal behavior and his refusal to conform to the laws of society. His past behavior indicates confinement will have little deterrent effect on him, but it is recommended as a deterrent to others.
>
> In his many psychiatric and psychological evaluations there is little to indicate that Mr.

## THE SENTENCING

In allocution, Wood explained the Sutherland burglary as the result of his intoxication and "going along with some friends." Judge Carlson was dissatisfied with this explanation.[2] He pointed out that burglary of a residence is a very serious offense. In sentencing Wood, Judge Carlson stated:

And the presentence report which you had access to shows quite a different situation with regard to your family situation now [from the position taken by Mr. Wood in allocution] and how hard they've tried and how they just can't seem to cope and how other people have tried and your lack of cooperation. Now, as [defense counsel] says, you do fit someplace between the cracks but our society as yet has not decided to have group homes for adults. You are a person who needs a group home. The only institution we have for that is jail, prison. You have earned to be in prison. [sic] What you have done deserves imprisonment and you're going to receive imprisonment because I know of no other way to deter you from criminal type conduct and therefore on the burglary in the first degree of the Sutherland residence the sentence is four years to serve, and on the burglary—or the larceny in a building, crime of theft of the building, count 2, the sentence—excuse me, it's burglary in the second degree, entering with the intent or remaining with the intent to commit theft in a building, committed on or about the 17th of April, the sentence is eighteen months consecutive to the sentence in count 1. I imposed consecutive sentences because you have a long history of criminal conduct. I have seen no evidence that you are changing and

that you are less of a danger to the public now than you were a few months ago and based upon that I think that consecutive sentences are the most appropriate to protect the public. It appears to me that a long period of time in prison is necessary so that maybe when you're in your mid-twenties you are less—have less of a mind to act out than you do now and that is why I am [sic] these sentences. You may appeal to the Alaska Supreme Court on the basis that they're too harsh. Do you have any questions [defense counsel]?

## DISCUSSION

Wood is a first felony offender. In *Austin v. State*, 627 P.2d 657 (Alaska App. 1981), we said:

Normally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender. It is clear this rule should be violated only in an exceptional case. However, it is also clear that the legislature did not intend to say that the first offender could never receive more time to serve than the presumptive sentence for a second offender, since the statute easily could have been written to accomplish that result.

627 P.2d at 657–58. Austin was convicted of criminal mischief in the second degree in violation of AS 11.46.482(a)(4), a class C felony. The presumptive term for a second offender is two years. Austin received a sentence of three years. We affirmed. We said:

We have concluded Austin's case is one of those exceptional cases where a sentence for a first felony offender can exceed the presumptive sentence for a second offender. The most important

---

Wood ever admitted a need or asked for help. This seems to be a primary obstacle to his recovery and is crucial if he ever is to succeed in treatment and become a contributing member to society. It may be that he will face the fears of change only when his present behavior becomes too painful for him. It is difficult to know the significance of his leaving documents which identify him at each of the

two burglaries. Hopefully they signify the beginnings of his call for help.

2. Judge Carlson interrupted Mr. Wood, preventing him from completing his allocution. While the trial court has discretion to manage a hearing, a defendant must be given a reasonable opportunity to make allocution. On remand Mr. Wood should be permitted to complete his allocution.

factor which supports the sentence which was imposed is the extensive juvenile record of the defendant. Austin was only eighteen at the time of this incident and had not been convicted of a felony as an adult, but he had a long juvenile record which started in 1968 when he was seven years old. The presentence report outlines the constant and numerous offenses and probation violations. Also, the report, in its evaluation of Austin, was concerned with the "almost continuous" nature in which offenses were committed. Many of these charges would have been felonies if the defendant had been an adult at the time of the offense. [Footnotes omitted.]

627 P.2d at 658.[3]

In subsequent cases, we have refined our decision in *Austin* to make clear what we meant by the kind of exceptional case which would warrant a sentence for a first felony offender in excess of the presumptive sentence for a second felony offender. To make a case exceptional, the trial court must find "either statutory aggravating factors [AS 12.55.155(c)] or circumstances that might have warranted referral of the case to a three-judge sentencing panel if presumptive sentencing applied. [AS 12.55.165–.175.]" *Tate v. State*, 711 P.2d 536 (Alaska App.1985); *Bolhouse v. State*, 687 P.2d 1166, 1177 (Alaska App.1984) (Bryner, Chief Judge concurring, joined by Coats, Judge). A first offender must therefore receive a more favorable sentence than he or she would have received if

sentenced as a second felony offender committing the same crime under the same circumstances. *Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983). The trial court found no specific aggravating factors in Austin's case and neither did we. Yet we viewed Austin's virtually continuous criminal record as a juvenile, characterized by numerous felony-level offenses, as the kind of extraordinary case that had he been a second felony offender might have made the presumptive term "manifestly unjust," because it was too lenient, warranting referral to a three-judge panel. In contrast to *Austin*, Wood's only significant offense occurred when at age fourteen he shook down two juvenile bus passengers for $5 and a bus pass and as a result spent three and one-half years in juvenile custody. His adult record consists of two criminal incidents, an assault and a malicious mischief conviction. In each case, the trial judge imposed a suspended imposition of sentence; in the latter case Wood was required to serve a twenty-day period of incarceration. These incidents, when viewed in conjunction with the two burglary offenses under consideration here, do not establish the kind of consistent criminal record that would render a sentence of four years, the presumptive term for a second felony offender, manifestly unjust because too lenient. The trial court found no statutory aggravating factors. AS 12.55.155(c) The trial court therefore erred in imposing a total sentence exceeding the four year presumptive term for a second felony offender.[4]

---

**3.** In a footnote we said this about Austin's record:

> Austin's record is so extensive and involves so many offenses that it is difficult to list them all. According to the presentence report, his record includes several burglaries and theft offenses. Significantly, Austin's record includes five different incidents of joyriding. Austin has been placed in various juvenile institutions and programs as a result of his juvenile offenses. Upon release, his pattern of behavior has been to commit additional offenses. The record also shows Austin was convicted on a charge of criminal trespass in the second degree while he was released pending sentencing on the current charge.

627 P.2d at 658 n. 3.

**4.** It must be borne in mind that Austin was convicted of a class C felony. The presumptive term for a second offender was therefore two years. A trial court, viewing a virtually continuous juvenile record of felony-level offenses, might well conclude that a two-year maximum sentence would be manifestly unjust because too lenient, particularly where the defendant had previously served time as a juvenile equal to or in excess of two years. In contrast, Wood was convicted of a class B felony, with a presumptive term of four years for a second felony offender. Clearly, a juvenile record that would make a two-year sentence manifestly unjust because too lenient would not necessarily estab-

We recognize Wood's unsuspended sentence for the class B felony was four years, exactly equal to the presumptive term for a second offender, and that the excess time is traceable to a second independent offense for which a consecutive sentence could legitimately have been imposed. Nevertheless, in *Lacquement v. State*, 644 P.2d 856 (Alaska App.1982) we indicated that when two or more sentences are imposed consecutively, the total sentence may not exceed the presumptive sentence for the most serious of the offenses in the absence of a finding that the total sentence must be served in order to protect the community. 644 P.2d at 862. Such a finding would ordinarily require a finding that the defendant could not be deterred by or rehabilitated during a lesser period of incarceration and therefore required "isolation" for the total term imposed in order to protect the public.[5] An emphasis on isolation generally requires a finding that the defendant was not deterred despite substantial prior imprisonment. Wood has never served a significant adult sentence. While we cannot ignore the three and one-half years Wood spent in juvenile custody, nor the similarity of the treatment programs available to incarcerated juveniles and adult criminals, juvenile institutionalization is simply not the exact equivalent of adult incarceration in determining a person's capacity to be deterred by an adult sentence of incarceration. We conclude that the trial court erred in imposing a total sentence in excess of the four-year presumptive term a second felony offender would receive for Wood's most serious offense. We must, therefore, remand this case for resentencing.

We are reinforced in this decision by two sentencing principles established by the Alaska Supreme Court which we believe will be of assistance to the trial court in determining an appropriate sentence on remand. The first is the principle that first felony offenders convicted of nonviolent crimes should receive probation with restitution in the absence of aggravating factors. *See Leuch v. State*, 633 P.2d 1006, 1013–14 (Alaska 1981). The second principle encourages consistency among sentences. Before imposing sentence a trial court should compare the prior criminal record and current conduct of the offender to be sentenced with the background and conduct of others previously sentenced for the same or similar offenses. *See, e.g., Pears v. State*, 698 P.2d 1198, 1202–04 (Alaska 1985); *Page v. State*, 657 P.2d 850, 854–55 (Alaska App.1983).

Since the few prior sentences for similar offenses known to the sentencing court may not be representative, and most sentences are not published, a meaningful comparison may be difficult. In most cases the court will have to rely on Judicial Counsel statistics and published reports of sentence appeals. In evaluating available reports of prior burglary sentences, it is

---

lish that a substantially longer sentence—four years—was manifestly unjust because it was too lenient. Austin's record, however, was substantially worse than Wood's record.

**5.** In *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), the supreme court indicated that a trial court should consider five factors in imposing sentence: (1) rehabilitation, (2) deterrence of the defendant, (3) deterrence of others, (4) affirmation of community norms, and (5) isolation. In *Larson v. State*, 688 P.2d 592 (Alaska App. 1984), we indicated that four of the *Chaney* criteria, rehabilitation, individual deterrence, deterrence of others, and affirmation of community norms will almost always be satisfied by a sentence equal to or less than the maximum sentence for the defendant's most serious offense, a longer composite sentence must therefore rest on the fifth *Chaney* criterion, isolation.

688 P.2d at 599. The same reasoning leads us to conclude that a *Lacquement* finding, that the defendant must be incarcerated for a period in excess of the presumptive term for his most serious offense, also must be based upon the need for isolation. 644 P.2d at 861–62. *See Bolhouse v. State*, 687 P.2d 1166, 1175 (Alaska App.1984). *Lacquement* involved a defendant who was subject to presumptive sentencing; Wood is not. If consecutive sentences whose total exceeds the presumptive term are inappropriate for a second offender, they would be inappropriate for a first offender not subject to presumptive sentencing because a first offender must receive a total sentence more favorable than a second offender committing the same crimes under the same circumstances. *See Brezenoff v. State*, 658 P.2d at 1362.

also important that the trial court bear in mind that legislative changes have substantially reduced the maximum penalties for some burglary offenses. *Cf. Whittlesey v. State,* 626 P.2d 1066, 1068 (Alaska 1980); *Sundberg v. State,* 652 P.2d 113, 115 (Alaska App.1982).

■ Applying those two principles to the instant case, we are satisfied that a total sentence including suspended time in excess of four years for Wood's current offenses would be clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974). Wood's prior juvenile record and the negative reports generated by his prior institutionalization as well as his failure to benefit from the two suspended impositions of sentence which he received for his recent misdemeanor offenses, might make the probation plus restitution envisioned in *Leuch v. State,* 633 P.2d at 1013–14, inappropriate here. Nevertheless, *Leuch* does suggest that even in aggravated cases the least possible incarceration consistent with the community's protection should be imposed. *See also Pears,* 698 P.2d at 1205 ("principle of parsimony" requires that defendant's liberty should be restrained only to the minimum extent necessary to achieve the objectives of sentencing). When we examine cases decided under prior law it becomes clear that the overwhelming majority of those convicted of burglary including those simultaneously sentenced for multiple offenses under circumstances similar to Wood, and with a background similar to Wood's, received a total sentence of two to three years' actual incarceration. We stress that any single case might be easily distinguished. It is the totality of the cases viewed together which we consider significant.[6]

6. *See, e.g., Deal v. State,* 626 P.2d 1073 (Alaska 1980) (four counts burglary not in a dwelling, sentence of ten years with seven and one-half years suspended approved; defendant was eighteen years old, had an adult record for negligent driving and one juvenile burglary); *Zurfluh v. State,* 620 P.2d 690 (Alaska 1980) (one count burglary not in a dwelling, five years with two years suspended; defendant nineteen years old, first felony offense, minor juvenile record with probation violations); *Kanipe v. State,* 620 P.2d 678 (Alaska 1980) (defendant committed one count of burglary not in a dwelling by breaking the window of a storefront and seizing display merchandise; initially given probation but failed on probation, court authorized incarceration but held any sentence over two years clearly mistaken); *Preston v. State,* 615 P.2d 594 (Alaska 1980) (burglary not in a dwelling; defendant second felony offender, no weapon or force in entry, good employment, held five years excessive, on remand, sentence not to exceed three years); *Larson v. State,* 613 P.2d 1251 (Alaska 1980) (burglary not in a dwelling, supreme court upheld sentence of five years with two and one-half years suspended, substantial criminal misdemeanor record and poor prognosis for rehabilitation); *Lock v. State,* 609 P.2d 539 (Alaska 1980) (five year sentence upheld for burglary not in a dwelling, burglary yielded $600; defendant had an extensive history of theft-related offenses and a poor social psychological history); *Ferreira v. State,* 602 P.2d 803 (Alaska 1979) (burglary not in a dwelling, $2,500 taken in theft, $1,300 damage to building, sentence of five years with two years suspended upheld; defendant, twenty-two years of age, had poor psychiatric reports, substantial numbers of burglaries as a juvenile and adult occurring within a five-year period); *Edinger v. State,* 598 P.2d 943 (Alaska 1979) (burglary not in a dwelling, two years, with eighteen months suspended, upheld); *Hunter v. State,* 596 P.2d 23 (Alaska 1979) (court approved two consecutive three-year sentences totalling six years, for two counts of burglary not in a dwelling, which were defendant's fourth and fifth felony convictions); *Winslow v. State,* 587 P.2d 738 (Alaska 1978) (three counts of burglary in a dwelling, composite sentence of ten years with five years suspended upheld; defendant was eighteen years old, had an extensive juvenile record, though apparently all offenses took place in a single year; Justice Boochever dissented stating that a maximum of five years with three years suspended would have satisfied the *Chaney* criteria); *Shagloak v. State,* 582 P.2d 1034 (Alaska 1978) (one count of burglary in an occupied dwelling, court approved a fifteen-year sentence; defendant was twenty-nine years old, had six prior burglary in a dwelling convictions, and ten convictions in a nine-year period during which he spent six and one-half years in prison); *State v. Tucker,* 581 P.2d 223 (Alaska 1978) (two counts of burglary not in a dwelling, six-month sentence; state appealed contending it was too lenient, supreme court affirmed); *Alex v. State,* 576 P.2d 113 (Alaska 1978) (five-year sentence approved for burglary not in a dwelling; defendant had a lengthy adult record); *Price v. State,* 565 P.2d 858 (Alaska 1977) (composite sentence of twenty years with ten years suspended affirmed for two counts of burglary in a dwelling; defendant had a substantial adult felony record); *Horton v. State,* 553 P.2d 484 (Alas-

Generally, sentences in excess of four years' incarceration were reserved for those with a substantial felony record or a series of concurrent offenses suggesting characterization of the defendant as a professional burglar, or some other substantial aggravating factor, such as the burglary of an occupied residence and an assault on an occupant. These decisions of the Alaska Supreme Court and of our court are particularly significant because most of them involve sentencing under two former statutes, AS 11.20.080 and AS 11.20.100. Alaska Statute 11.20.080 (burglary in a dwelling) permitted, respectively, a maximum sentence of twenty years if the offense was committed in the nighttime and the residence was occupied, fifteen years if committed in the nighttime in an unoccu-

pied residence, and ten years if committed in the daytime. Former AS 11.20.100, (burglary not in a dwelling) permitted a maximum sentence of five years. While burglary not in a dwelling is punished by the same range of sentences under current law, the revised code substantially reduces the punishment where an occupied dwelling or a nighttime offense occur.

In summary, there is nothing in Wood's record or the circumstances of his current offenses that would warrant a total sentence including suspended time, in excess of four years' incarceration.

The sentence of the superior court is VACATED and this case REMANDED for resentencing.[7]

COATS, J., not participating.

---

ka 1976) (five years with two years suspended for one count of burglary not in a dwelling affirmed; defendant was a third felony offender who had two prior probation revocations); *Battese v. State,* 425 P.2d 606 (Alaska 1967) (supreme court affirmed three years with all but sixty days suspended for one count of burglary not in a dwelling).

Consideration should also be given to three decisions by this court: *Maal v. State,* 670 P.2d 708 (Alaska App.1983) (ten years excessive for one count of burglary in first degree, entering occupied dwelling at night; on remand, sentence not to exceed ten years with four suspended; although defendant had prior record, trial court placed too much weight on this and poor psychological prognosis where defendant has shown strong motivation towards rehabilitation); *Deal v. State,* 659 P.2d 625 (Alaska App. 1983) (sentence not to exceed ten years for one count of first-degree burglary and one count of burglary not in a dwelling, where defendant's probation was revoked; defendant was twenty-two at time of resentencing, had extensive juvenile record and broke a number of conditions of probation, including committing criminal mischief in second degree); *Hicks v. State,* 636 P.2d 81 (Alaska App.1981) (five years for burglary not in a dwelling, concurrent with five years to serve for second offense, not excessive; although first felony offender, defendant had history of theft-related offenses).

7. Should the court on remand impose the maximum four year sentence, it should clearly indicate what offenses it considers constitute Wood's prior criminal record. We note that there are a number of otherwise unverified references to poor behavior alluded to in the various psychological and psychiatric reports. If the trial court intends to rely on any one or

more of these incidents to establish a pattern of behavior in order to predict a likely recidivism, each incident should be verified. *See Nukapigak v. State,* 562 P.2d 697, 701 (Alaska 1977) *on rehearing* 576 P.2d 982 (Alaska 1978) (explaining how incidents may be verified in order to be properly considered at sentencing). Further, while the trial court can certainly take into consideration the psychiatric and psychological evaluations that Wood has heretofore received, it should note that the most recent is over two years old and that given Wood's relative youth and immaturity, a more recent psychiatric evaluation would be valuable. *But cf. Shagloak v. State,* 582 P.2d 1034, 1040 n. 15 (Alaska 1978) (psychological report from one year before offense sufficient if sentencing court is "fully aware" of defendant's personal and psychological background). In any event, the trial court should not place undue reliance on predictions of future dangerousness. *See, e.g., Maal v. State,* 670 P.2d 708, 711–12 (Alaska App.1983); *State v. Andrews,* 707 P.2d 900, 917 (Alaska App.1985), *petition for hearing granted* (Alaska, December 6, 1985).

We note that all of the psychiatric and psychological evaluations indicate Wood's need for antidepressant medication, while from the current record it appears that medication may have been discontinued. This issue should be addressed on remand. We do not necessarily suggest that antidepressant medication would make Wood less of a danger to the community, but it might create an environment in which his rehabilitation would have a more promising prognosis. *Cf. Hansen v. State,* 582 P.2d 1041, 1047–48 (Alaska 1978) (stressing need that trial court consider effect of court-supervised treatment and medication in determining risk of defendant's recidivism).