**Jake W. FOLEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7514.**

Court of Appeals of Alaska.

Oct. 6, 2000.

---

Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Taylor E. Winston, Assistant District Attorney, Susan A. Parkes, District Attorney, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Jake W. Foley received a sentence of 5 years' imprisonment—the maximum permissible sentence—for the offense of felony driving while intoxicated. On appeal, he contends that this sentence is excessive. In light of Foley's numerous past offenses and his repeated failures at rehabilitation, we conclude that this sentence is not clearly

mistaken. We therefore affirm Foley's sentence.

On May 6, 1999, Foley was driving north on the Seward Highway between Anchorage and Girdwood. He drove into the oncoming lane, forcing a southbound driver to steer off the road to avoid a collision. This driver, William Stoskopf, turned around and followed Foley's truck toward Anchorage. For the next twenty minutes, Stoskopf observed Foley driving erratically. At Potter Marsh, where the highway divides as it approaches Anchorage, Foley veered left and began to head into the southbound lanes of travel before he swerved back into the northbound lanes.

Foley took the Rabbit Creek Road exit and turned west toward the Old Seward Highway; Stoskopf continued to follow him. Foley drove through a stop sign, ran over a median strip, and then headed north toward town. He made a wide right turn onto Huffman Boulevard (now heading east). In the process, he almost hit another motorist, who had to take evasive action to avoid collision.

In the meantime, Anchorage police dispatch had alerted its officers to be on the lookout for a suspected drunk driver who was being followed by another motorist. Officer Glenn Daily came upon Foley and Stoskopf as Foley was making the dangerous turn onto Huffman Boulevard. Daily got behind Foley's vehicle, preparing to turn on his overhead lights and make a traffic stop.

But before he could do so, Foley veered left across the oncoming lanes of traffic, cutting off a westbound vehicle. Foley's truck continued to the far side of the road, over the curb and sidewalk, and through the grass at the corner of the Huffman Business Park. Daily now activated his lights. Rather than stopping, Foley accelerated and headed north. However, Foley missed a curve in the road and came to an abrupt halt in the grass.

When Daily approached Foley, he smelled a very strong odor of alcohol and he observed open beer cans in the truck. Daily had a hard time getting Foley's attention. When Foley climbed out of his vehicle, he was so unsteady on his feet that Daily had to support him. A subsequent breath test

showed that Foley's blood alcohol level was .33 percent.

Based on this conduct, and because Foley had two prior convictions for driving while intoxicated within the preceding five years, Foley was indicted for felony driving while intoxicated.[1] Felony DWI is a class C felony; the maximum punishment for this crime is 5 years' imprisonment.[2]

Foley was 52 years old at the time of sentencing. He had accumulated thirty criminal convictions during the past quarter century, including four felonies. However, Foley's felonies were relatively old; the most recent, a conviction for second-degree criminal mischief, was from 1985. Foley was discharged from his felony probation in 1987, so he was not subject to presumptive sentencing in this case.[3]

Even though Foley was a first felony offender for presumptive sentencing purposes, he had seven prior convictions for driving while intoxicated: one in 1985, two in 1987, one in 1989, one in 1992, one in 1996, and one in 1998. Based on these prior convictions, Foley conceded that the State could prove aggravating factor (c)(21): that Foley had a criminal history of repeated instances of criminal conduct similar in nature to his present offense.[4] Because of this aggravating factor, the superior court was authorized to consider sentences exceeding the 2-year presumptive term that would apply to a second felony offender convicted of the same crime.[5]

In addition to his seven prior DWI convictions, Foley had been convicted five times of driving while his license was suspended, as well as failure to identify himself and to render assistance at the scene of an accident ("hit and run").

At sentencing, Superior Court Judge *pro tempore* Gregory J. Motyka declared that he would consider Foley's offense to be significantly aggravated even if Foley were a first-time DWI offender. Judge Motyka pointed out that Foley's blood alcohol level was extremely high, that Foley was driving with a revoked driver's license, that he went down the highway the wrong way, that he almost struck another motorist (Stoskopf), and that he was "totally oblivious to what [was] going on".

Based on the fact that Foley had repeatedly driven while intoxicated and had repeatedly driven while his license was suspended or revoked, Judge Motyka concluded that "[Foley's] rehabilitation is not ... feasible.... [I]t's just not going to happen." The judge declared that, "at this point, ... isolation is the [primary] *Chaney* criterion.... [T]hat's the one that protects the public—and saves [Foley's] life, perhaps." [6]

After discussing the various *Chaney* sentencing criteria, and after reviewing this court's decision in *White v. State*[7], Judge Motyka concluded, based on "Mr. Foley's record and [his] driving in this case", that Foley was a "worst offender" for sentencing purposes. The judge recognized that, even though he found Foley to be a worst offender, he was not obliged to sentence Foley to the 5-year maximum term. However, Judge Motyka concluded that a 5-year sentence was necessary in Foley's case:

> *The Court:* [I am] left with the feeling that, sooner or later, Mr. Foley is going to get out, and Mr. Foley is going to drink again, and Mr. Foley is going to drive again. He has consistently driven while

---

**1.** AS 28.35.030(n).

**2.** AS 28.35.030(n); AS 12.55.125(e).

**3.** *See* AS 12.55.145(a)(1)(A) (a prior conviction does not alter a defendant's presumptive sentencing status if 10 years or more has elapsed between the defendant's unconditional discharge from the immediately preceding felony and the commission of the current offense unless the prior conviction was for an unclassified or class A felony).

**4.** *See* AS 12.55.155(c)(21).

**5.** *See Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981); *Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983). The *Austin* rule is now codified in AS 12.55.125(k).

**6.** *See State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970); *see also* AS 12.55.005.

**7.** 969 P.2d 646 (Alaska App.1998) (upholding a maximum sentence for felony driving while intoxicated).

his license is revoked. I can't stop him, and I don't believe one [or] two years of suspended time is going to make a difference. For that reason, [the] defendant is ordered into the care and custody of the Commissioner of the Department of Corrections for a period of 5 years.

 Under Alaska law, a sentencing judge must find that a defendant is a "worst offender" before the judge is authorized to sentence the defendant to the maximum term of imprisonment. A "worst offender" finding can be based either on the circumstances surrounding the defendant's present offense, or on the defendant's criminal history, or both.[8] Here, Judge Motyka found that Foley should be deemed a worst offender for both reasons.

In his brief to this court, Foley argues that Judge Motyka should not have classified Foley as a worst offender. Relying on *Tate v. State*[9], Foley argues that the judge "placed inordinate weight" on Foley's record of prior convictions.

In *Tate*, this court reduced the sentence of a first felony offender convicted of second-degree (non-dwelling) burglary. We concluded that the sentencing judge had placed inordinate weight on the fact that Tate had committed a string of theft-related misdemeanors during the two years preceding his felony offense:

> Tate's misdemeanor record, given its continuous nature and the short period of time between his most recent [prior] offense and the instant [burglary], clearly warranted a [significant] sentence [of imprisonment]. Nevertheless, *Leuch* [*v. State*, 633 P.2d 1006, 1014 n. 22 (Alaska 1981),] teaches that the trial court should not impose substantial periods of imprisonment on someone who has not [previously] been subjected to lesser periods of imprisonment.

*Tate*, 711 P.2d at 540.

This passage lends some weight to Foley's argument. But immediately after the quoted passage, the *Tate* court added a clarifying footnote:

> In *State v. Graybill*, 695 P.2d 725 (Alaska 1985), the supreme court affirmed a composite [sentence of] seven years with five and one-half years suspended imposed on a misdemeanant convicted of twenty fish and game violations. *Id.* at 731. The defendant had a twenty-year record of fish and game violations ... and was on probation at the time he committed the twenty offenses for which he was sentenced. *Graybill's relative maturity, the length of his criminal record[,] and his established immunity from rehabilitation serve to distinguish Graybill's case from Tate's.*

*Tate*, 711 P.2d at 540 n. 2 (emphasis added).[10]

 Foley is likewise a mature defendant with a lengthy record of convictions and seeming "immunity from rehabilitation". But unlike the defendant in *Graybill*, whose record consisted of fish and game violations, Foley's record is replete with convictions for driving while intoxicated-an offense which, as the facts of this case illustrate, poses a significant danger to the life and safety of others.

We recognize that Foley's past DWI convictions have, to some extent, already been used to increase his sentence: he stands convicted of a class C felony (rather than a class A misdemeanor) because of his two other DWIs within the preceding five years. But Foley's record consists of more than the two prior DWIs required for a felony charge. As explained above, Foley has seven prior convictions for this crime, as well as another five convictions for driving while his license was suspended, and another conviction for hit and run. Despite the fact that all of these convictions were misdemeanor convictions, we conclude that Judge Motyka could properly place substantial weight on Foley's record.

 Foley points out that his 5 year sentence substantially exceeds the 360 day mini-

---

8. *See State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975); *Napayonak v. State*, 793 P.2d 1059, 1062 (Alaska App.1990).

9. 711 P.2d 536 (Alaska App.1985).

10. *See also Pointer v. Anchorage*, 812 P.2d 232, 234 (Alaska App.1991), where we upheld the defendant's classification as a "worst offender" in large measure because of the defendant's "extensive misdemeanor record".

mum sentence that applies to his offense under AS 28 .35.030(n)(1)(C).[11] But a mandatory minimum sentence represents the legislature's judgement concerning "[the] minimum sentence ... appropriate for [an] offender whose conduct is the least serious contemplated by the definition of the offense".[12] Judge Motyka found that Foley was among the worst offenders, and the record supports that finding.

 Foley also points out that his sentence exceeds the 3–year presumptive term that would apply if he were a third felony offender .[13] But this presumptive term "represents the legislature's judgement as to the appropriate sentence for a typical third felony offender who commits a typical act [within the definition of the offense]." [14] Judge Motyka found that Foley's offense was aggravated, even without consideration of his prior convictions.

Moreover, Judge Motyka found, based on Foley's extensive record of DWIs and related driving offenses, that Foley could neither be rehabilitated nor deterred. This finding is supported by the record. Given this finding,

Judge Motyka could properly conclude that Foley's lengthy series of driving offenses, although misdemeanors, distinguished Foley "from the typical [third felony] offender ... envisioned by the legislature when it established the presumptive terms." [15]

When a sentence is challenged on the ground that it is excessive, we are to uphold the sentence unless we are convinced that it is clearly mistaken.[16] Having reviewed the record in Foley's case, we conclude that the record (1) supports Judge Motyka's finding that Foley is a worst offender and (2) supports Judge Motyka's decision to sentence Foley to the 5–year maximum term for his offense.

The judgement of the superior court is AFFIRMED.

**11.** This section of the statute establishes a 360–day minimum sentence for defendants convicted of felony DWI if they have previously been convicted four or more times within the preceding ten years.

**12.** *Middleton v. Anchorage,* 673 P.2d 283, 284 (Alaska App.1983).

**13.** *See* AS 12.55.125(e)(2).

**14.** *Mullin v. State,* 886 P.2d 1323, 1328 (Alaska App.1994). *See Juneby v. State,* 641 P.2d 823, 833, 838 (Alaska App.1982).

**15.** *Looney v. State,* 826 P.2d 775, 780 (Alaska App.1992).

**16.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).